293 A.2d 307.

PHILIP SWANSON *vs.* SPEIDEL CORPORATION *et al.*

JULY 11, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

336

PAOLINO, J. This case is here on the plaintiff's appeal from an order which was entered following the granting of the defendants' motion for judgment on the pleadings by a justice of the Superior Court.

The plaintiff, a former employee of Speidel Corporation, brought a defamation action against Speidel and various employees of Speidel for repeated publications of defamatory allegations concerning his working habits and honesty to prospective employers of plaintiff. In his amended complaint plaintiff alleges that either or both of his former supervisors, defendants Joseph Ferreira and Hillary Woodhouse, upon his resignation from the company, wrote a termination notice to Speidel's Personnel Department; that the termination notice was and is kept in the firm's files and read to an inquirer over the telephone; and that thereafter on various occasions, within one year prior to the date of the amended complaint, upon receipt of telephone inquiries of prospective employers of the plaintiff, defendant Christine Lomastro and other employees of Speidel read portions of the above-mentioned "termination notice" over the telephone, to wit, the following:

"* * * that the plaintiff was a 'chronic absentee', indifferent, irresponsible, needed constant supervision, and that the plaintiff would not be rehired by the defendant corporation and had poor attendance."

.The amended complaint, after stating that such charges were untrue, further alleges:

> " * *.* the charges so made in the aforementioned 'termination notice', printed, published, republished and spoken by the defendants were printed, published, republished and circulated with express and implied malice and with design or intent to injure plaintiff in his good name, reputation and employment, and were in every particular false, misleading, defamatory, libelous, unprivileged and without legal excuse."

The defendants, without filing an answer, filed a motion for judgment on the pleadings pursuant to Super. R. Civ. P. 12(c)[1] on the ground that the alleged communications were privileged and also on the ground that plaintiff failed to allege that the defamatory communications occurred within the one-year period prior to suit as provided in G. L. 1956 (1969 Reenactment) §9-1-14. The defendants waived the latter ground and, after hearing, the Superior Court justice granted defendants' motion for judgment on the pleadings. The trial justice, in so ruling, apparently relied on *Ponticelli* v. *Mine Safety Appliance Co.*, 104 R. I. 549, 247 A.2d 303 (1968). The plaintiff then filed this appeal. He contends that the trial justice erred in granting defendants' motion. We agree with plaintiff and therefore reverse.

## I

We consider initially plaintiff's argument that because of defendants' failure to file an answer to the complaint it may have been improper to grant defendants' motion for

---

[1]Rule 12(c) reads as follows:

"Motion for Judgment on the Pleadings. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

judgment on the pleadings. There is no merit to this argument. As Professor Kent points out in his commentary to Rule 12(c) in 1 Kent, *R. I. Civ. Prac.*, §12.13 at 118, when a motion for judgment on the pleadings is made by the defendant, such a motion is normally an attack upon the sufficiency of the complaint and is thus, in effect, a Super. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim. The allegations of the complaint are taken as true and for the purposes of such a motion to dismiss, the complaint should be viewed in the light most favorable to plaintiff, and no complaint will be deemed insufficient unless it is clear beyond a reasonable doubt that the plaintiff will be unable to prove his right to relief, that is, unless it appears to a certainty that he will not be entitled to relief under any set of facts which might be proved in support of his claim. *Bragg* v. *Warwick Shoppers World, Inc.*, 102 R. I. 8, 227 A.2d 582 (1967). On this record the filing of an answer was not required to close the pleadings — this was in effect accomplished by defendants' motion. We now proceed to consider this appeal in the light of these guidelines.

## II

We consider next the question whether the alleged defamatory allegations in plaintiff's complaint were conditionally privileged. We address ourselves first to the intra-company communications, that is, the written termination notice sent by plaintiff's superiors to Speidel's Personnel Department. We believe that with respect to these, *Ponticelli, supra,* is dispositive, and, therefore, no prolonged discussion is necessary other than to say that the trial justice was warranted in concluding that the intra-company communications as alleged in plaintiff's complaint were conditionally privileged. As we said in *Ponticelli,* the determination of whether on the particular facts of a given case the privilege exists is exclusively legal and is for the

court, and not for the jury. Whether plaintiff's allegation of malice defeats the privilege in this case we defer until later in this opinion.

The next question is whether the qualified privilege which we have held exists between the employer and the employees of the same employer applies to a communication by a former employer to a prospective employer in regard to an employee's work characteristics. The plaintiff specifically alleges that the information was given to inquiring prospective employers. The plaintiff contends that the "reciprocity of duty" which we spoke about in *Ponticelli* does not apply to defamatory communications between a former employer and a prospective employer. In *Ponticelli* we said:

> "Correlatively, of course, there must be a reciprocity of duty between the publisher and the person to whom the publication is addressed, and the circumstances should reasonably demonstrate that the recipients have an interest in receiving it corresponding to that of the publisher in making it." 104 R. I. at 551, 247 A.2d at 306.

The plaintiff contends that the "reciprocity of duty" between an employer, fellow employees, and superior of a defamed employee, and their "common interest" in company matters affecting the livelihood and working conditions cannot be equated with the interests of two possibly competing companies, one being the defamed person's former employer and one being a prospective employer.

We are not persuaded by plaintiff's argument. It seems to us that the rationale in *Ponticelli* should apply with equal force to a situation involving prospective employers. In discussing the qualified privilege concept in that case we said at 551, 247 A.2d at 305-06 that the qualified privilege concept:

> "* * * permits a person to escape liability for a false and defamatory statement made about another if the occasion for the publication is such that the publisher

340

> acting in good faith correctly or reasonably believes that he has a legal, moral or social duty to speak out, or that to speak out is necessary to protect either his own interests, or those of third persons, or certain interests of the public. The occasion, of course, must not be abused. Underlying the principle is the public policy consideration that unless such an occasion is privileged, persons would not speak, even though the interests of the community at large required that they do so, lest they be exposed to a suit for defamation for what they might say."

As we said above, we believe that the rationale articulated in the above-quoted language is applicable here. We believe that the public interest requires that the protection of the privilege be accorded to a communication by a former employer to a prospective employer with regard to a former employee's work characteristics where the publisher acts in good faith and has reason to believe that to speak out is necessary to protect "* * * his own interests, or those of third persons, or certain interests of the public." By giving such information in good faith to other employers protects the publisher's own interests by insuring that he may seek and receive the same information when about to hire new employees. *See* 1 Harper and James, *Torts* §5.26 at 447 (1956); *see* 3 Restatement, *Torts,* §595, comment *h* at 252 (1931); *see also* Prosser, *Torts* ch. 19, §115 at 788 (4th ed. 1971).

*Ponticelli* teaches that a defendant may not unreasonably exercise the qualified privilege, and an occasion otherwise conditionally privileged cannot be sustained if the defamatory statements have been induced by malice, that is, not malice in the legal sense, but rather malice in the popular sense, such as personal spite or ill will. As shown above plaintiff alleges in his amended complaint that all the defamatory statements were "* * * printed, published, republished and spoken by the defendants * * * with express and implied malice * * *." For the purposes of this motion

that allegation is taken as true. Even if the alleged defamatory communications in this case are accorded the protection of conditional privilege, there remains the question of malice.

The plaintiff argues, and we think rightly so, that his allegation of malice presented a fact question for the fact-finder to resolve. He relies on the following language in *Ponticelli* at 556, 247 A.2d at 308:

> "Ordinarily malice in this sense is presumed from the defamatory nature of the publication and a defamed person may rely upon that presumption without the necessity of offering proof. Where, however, the communication is privileged, the presumption disappears and is replaced by one of good faith. It then becomes the defamed person's obligation to prove express malice. (cite omitted) To support his burden he must show that the primary motivating force for the communication was the publisher's ill will or spite toward him. Where, however, the causative factor was the common interest, a publisher's resentment toward the person defamed is immaterial and any incidental gratification is without legal significance."

Whether ill will or spite is the incentive for a publication is, as we pointed out in *Ponticelli*, a fact question and is ordinarily for the fact-finder to decide unless the only reasonable conclusion that can be reached from the facts alleged is that the ill will or spite alleged were merely incidental rather than motivating. We believe that the plaintiff here has sustained his burden of alleging facts which indicate that the causative factor underlying the alleged communications was ill will or spite rather than common interest. We cannot conclude as a matter of law that the only reasonable conclusion from the facts alleged is that the causative factor underlying those communications was the common interest of the publishers within the Speidel Company and between Speidel and prospective employers of the plaintiff. Whether the primary motiva-

tion for the communications was the publisher's ill will or spite toward the plaintiff, or whether the causative factor was the common interest, were fact questions for the fact-finder to resolve. In the circumstances we hold that the trial justice erred in granting defendants' motion.

The plaintiff's appeal is sustained, the order appealed from is reversed, and the case is remitted to the Superior Court for further proceedings.

*Capaldi & Vitullo, Joseph F. Vitullo,* for plaintiff.

*Hinckley, Allen, Salisbury & Parsons, Thomas J. Hogan, Thomas D. Gidley, Michael P. DeFanti,* for defendants.