James F. BELLIVEAU

v.

Mark N. RERICK.

No. 83–311–Appeal.

Supreme Court of Rhode Island.

Feb. 18, 1986.

Peter Olsen, Reilly Suvari Oliver & Olsen, Wickford, James P. Quirk, Warwick, for plaintiff.

Bruce H. Cox, Marifrance K. McGinn, Carroll Kelly & Murphy, Providence, Paul M. Finstein, Warwick, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a summary judgment entered in favor of the defendant in the Superior Court. We affirm. The facts of the case are as follows.

The plaintiff, James F. Belliveau, served as an assistant professor of chemistry at Providence College for approximately thirteen years. On September 25, 1980, plaintiff informed the chairman of the chemistry department, Professor Mark N. Rerick, that he would apply for promotion from assistant professor to associate professor. The defendant suggested that plaintiff should submit supporting materials that would be of assistance to the committee that would review his qualifications for promotion. Pursuant to this suggestion, plaintiff submitted a four-page summary of his research activities and publications during his period of service at Providence College. By responses to requests for admissions and through the affidavits filed by the parties, it was established that in accordance with academic policy at Providence College, members of the chemistry department met to consider plaintiff's promotion request. Four senior members of the chemistry faculty voted to approve the request. It then became the responsibility of defendant according to academic policy and regulations to submit his recommendation in written form to Dr. Paul van K.

Thomson, vice president of academic administration. In furtherance of this responsibility, defendant submitted the following memorandum to Dr. Thomson:

"On October 6, 1980, eligible members of the Chemistry Department met to consider the promotion of James F. Belliveau to the rank of Associate Professor. The members considered the qualifications for such promotion as cited in Article V. C. of the Faculty Manual, especially items 3. and 4. In connection with item 3. (publications and research) the members reviewed materials submitted to them by Dr. Belliveau. While he did not submit material relative to item 4. (recognition by colleagues), the members discussed that area based upon their (and my) personal knowledge.

"By secret ballot, the members voted (4 yes, 0 no, 0 blank) to recommend Dr. Belliveau for promotion to the rank of Associate Professor.

"As Chairman of the Department I have a serious reservation with that recommendation particularly in regard to Dr. Belliveau's publication record. While there is, in my opinion, more than ample evidence of Dr. Belliveau's continuing and increasing scholarly development through this [*sic* ] research activities, especially in the last 3–4 years, there is no evidence of such continuing and increasing development through publication activities. In his ten years at Providence College Dr. Belliveau has not published except a brief note in an in-house bulletin, i.e. *Providence College Biological Notes.*

"In my opinion Dr. Belliveau fails to meet major criteria for promotion to the rank of Associate Professor. I do not recommend him for promotion to that rank at this time."

As a result of defendant's recommendation, Dr. Thomson informed plaintiff that the Providence College Committee on Academic Rank and Tenure declined to recommend to the president of the college that plaintiff be promoted to the rank of associate professor of chemistry. This memorandum contained the following language:

"At the meeting of the Committee on Academic Rank and Tenure of November 19, 1980, a motion to recommend to the President that you be promoted to the rank of Associate Professor of Chemistry to take effect with your contract for 1981–1982 failed to pass. On the basis of the discussion within the Committee, it is my opinion that the decision reached was based upon the absence of refereed publications in scholarly journals.

"After the President has had an opportunity to review this recommendation, he will inform you of his decision."

As a consequence, plaintiff was not promoted. On June 11, 1982, plaintiff filed a complaint in the Superior Court seeking damages incurred as a result of the statements contained in defendant's memorandum to Dr. Thomson. He alleged that these statements were libelous. The gist of plaintiff's complaint arose out of defendant's statement: "In his ten years at Providence College Dr. Belliveau has not published except a brief note in an in-house bulletin, i.e. *Providence College Biological Notes.* " The plaintiff alleges that this statement was false and that its falsity is apparent from the four-page list of research activities and publications submitted to the department committee. It is disclosed by the affidavits submitted in support of the motion for summary judgment and the affidavit and memoranda in opposition thereto that plaintiff and defendant disagreed on the definition of the term "published." For example, defendant did not consider theses of undergraduate and graduate students prepared under the supervision of plaintiff as publications. He also did not consider abstracts outlining papers presented at scientific meetings to be publications. However, there is no dispute about the fact that defendant's recommendation and opinion were based upon the four-page list of activities and "publications" submitted by plaintiff himself.

In support of his appeal, plaintiff asserts that the mischaracterization of his works and the statement that he had only one "publication" were both false and defamatory. The defendant argues in opposition to the appeal that his statement of opinion was made on the basis of disclosed facts and that it is constitutionally privileged. The defendant also argues that even if his factual statement were inaccurate, he is entitled to a qualified privilege conferred upon one who has a duty by virtue of his relationship to the vice president of academic administration to speak on the subject of proposed faculty promotions within his department. In light of our determination of the issue relating to expression of opinion, extended analysis of the qualified-privilege issue is unnecessary.

## I

### WAS DEFENDANT'S STATEMENT CONSTITUTIONALLY PRIVILEGED AS THE EXPRESSION OF AN OPINION?

Although at common law an expression of opinion might have been actionable as defamatory in the event that such an expression was sufficiently derogatory of another to cause harm to his reputation, 3 Restatement (Second) *Torts* § 566 at 170–71 (1976), that rule now appears to have been rendered unconstitutional by the pronouncements of the Supreme Court of the United States in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). In that case the Court observed:

"Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Id.* at 339–40, 94 S.Ct. at 3007, 41 L.Ed.2d at 805.

As a result of the foregoing observation, the Restatement of *Torts* on this subject was modified so that § 566 now provides:

"A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." 3 Restatement (Second) *Torts* § 566 at 170.

In the comment to § 566, the reporter's notes indicate:

"A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how deragotory it is." *Id.* at 173.

Shortly after this revision, the Court of Appeals for the Sixth Circuit in *Orr v. Argus-Press Co.,* 586 F.2d 1108, 1114 (6th Cir.1978), *cert. denied,* 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979), noted, "It is now established as a matter of constitutional law that a statement of opinion about matters which are publicly known is not defamatory." We applied these principles to a derogatory expression of opinion in *Hawkins v. Oden,* — R.I. —, 459 A.2d 481 (1983). In that case we held that the facts upon which the derogatory opinion was based were publicly known and that therefore the opinion, whether justified or not, was constitutionally privileged as a matter of law.

In the case at bar, not only were the facts upon which the opinion was based fully disclosed but those facts had also been supplied by plaintiff himself. In effect, plaintiff contends that these facts rendered defendant's expression of opinion wholly unjustified. There seems no doubt, however, that defendant's statement of opinion concerning plaintiff's publications and the characterization thereof was based wholly upon the four-page list that had been submitted to the committee by plaintiff. Thus, the facts were fully disclosed.

■ Considering defendant's memorandum in its entirety, we conclude that his statements relating to the quality and extent of plaintiff's publications during his period of service at Providence College constituted an opinion based upon the four-

page summary furnished to the committee by plaintiff.

■ Given this posture of events, it became the function of the court to determine whether defendant's statement to Dr. Thomson was capable of bearing a defamatory meaning in that it might be reasonably understood to imply the assertion of undisclosed facts. *Hawkins,* — R.I. at ——, 459 A.2d at 484; 3 Restatement (Second) *Torts* § 566, comment c at 173. Consequently, this was an appropriate determination to be made on motion for summary judgment. *Rhode Island Recreational Building Authority v. Industrial National Bank of Rhode Island,* — R.I. ——, ——, 494 A.2d 537, 539 (1985); *Ludwig v. Kowal,* — R.I. ——, ——, 419 A.2d 297, 301 (1980). We are of the opinion that on the record presented to the trial justice, one could only conclude that the facts upon which the defendant's opinion was based were wholly disclosed in plaintiff's own supporting summary of research activities and publications. Given the constitutional privilege and the facts as described by plaintiff, himself, defendant was undoubtedly entitled to summary judgment as a matter of law.

## II

### WAS DEFENDANT'S STATEMENT ENTITLED TO THE BENEFIT OF A QUALIFIED PRIVILEGE?

In *Ponticelli v. Mine Safety Appliance Co.,* 104 R.I. 549, 247 A.2d 303 (1968), this court recognized the defense of qualified privilege even for false and defamatory statements of fact "if the occasion for the publication is such that the publisher acting in good faith correctly or reasonably believes that he has a legal, moral or social duty to speak out, or that to speak out is necessary to protect either his own interests, or those of third persons, or certain interests of the public." *Id.* at 551, 247 A.2d at 305–06. In that case the qualified privilege was applied to a statement made by a supervisor of a manufacturing unit who stated, possibly incorrectly, that the plaintiff had falsified her production records. This court upheld the direction of a verdict in favor of the defendant on the ground that there was insufficient evidence of common-law malice (spite or ill will)[1] to create a jury question. *Id.* at 555–58, 247 A.2d at 308–09.

■ In the event that the defendant's statement in the case at bar constituted one of fact rather than one of opinion, he would doubtless have been entitled to the benefit of a qualified privilege since his relationship to the administration of Providence College imposed a duty upon him to comment frankly upon the merits of applicants for promotion within his department and to evaluate the qualifications of candidates for such promotion. *See Byars v. Kolodziej,* 48 Ill.App.3d 1015, 6 Ill.Dec. 814, 363 N.E.2d 628 (1977). It would then have been necessary for us to determine whether the plaintiff had raised, in opposition to the motion for summary judgment, a genuine issue of material fact in respect to common-law malice. On this record, no such genuine issue of fact was raised in the plaintiff's affidavit. In any event, our resolution of the opinion issue makes it unnecessary to apply the doctrine of qualified privilege in this case since such a privilege need not be invoked unless a false statement of fact is at issue.

For the reasons stated, the appeal of the plaintiff is denied and dismissed. The entry of summary judgment is affirmed. The papers in the case may be remanded to the Superior Court.

---

**1.** It is important to distinguish common-law malice, which connoted evil intent or motive arising from spite or ill will, from "actual malice" as set forth in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). For constitutional purposes as determined in that case, "actual malice" is defined as a statement of fact made with knowledge that it was false or with reckless disregard of whether it was false. *Id.* at 279–80, 84 S.Ct. at 726, 11 L.Ed.2d at 706. For a more extensive treatment of this distinction, see *DeCarvalho v. daSilva,* — R.I. ——, ——, 414 A.2d 806, 810–11 (1980).