**Geraldine MILLS, M.D.**

v.

**C.H.I.L.D., INC., et al.**

No. 2003–90–Appeal.

Supreme Court of Rhode Island.

Dec. 19, 2003.

Geraldine Mills, pro se, for Plaintiff.

James T. McCormick, Esq., Providence for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

Granting summary judgment, the Superior Court dismissed claims of slander and interference with contract against a day-care center for low-income families and certain of its employees. It did so because it determined that the plaintiff, Geraldine Mills, M.D. (plaintiff or Dr. Mills), failed to submit sufficient evidence to create a genuine issue of material fact for a jury to decide whether she was entitled to recover damages. The court also ruled that the defendants, C.H.I.L.D., Inc., Karen Stanley, Vickie Turnquist, and Kristin Brooks, were entitled to judgment as a matter of law.

The plaintiff appeals *pro se* from this summary judgment. She contends that

the Superior Court erred because questions of material fact existed about whether defendants acted in good faith and without malice. She also contends that the Superior Court erred in denying in part her motion to amend her complaint. She argues that her amended counts sufficiently put defendants on notice of her claims.

Because defendants were entitled to a qualified privilege in uttering the challenged communications, because Dr. Mills failed to introduce any evidence from which a jury could infer ill will or malice on the part of defendants in making such statements, and because Dr. Mills suffered no damages as a result of the alleged intentional interference with contract, we affirm.

### Facts and Travel

The defendant, C.H.I.L.D., Inc., operated a daycare and head-start program for children of low-income families. The defendant Karen Stanley (Stanley) was the health coordinator for C.H.I.L.D., Inc. The defendants, Vicki Turnquist (Turnquist) and Kristin Brooks (Brooks) also were employees of C.H.I.L.D., Inc. According to Nelson Ball (Ball), a parent who enrolled children in the program at C.H.I.L.D., Inc., Turnquist told him on September 30, 1998, that he would have to find another health-care provider because "United Health [RIte Care] was not taking Dr. G. Mills." Turnquist explained that she had heard from Stanley that plaintiff no longer was taking RIte Care patients. According to Turnquist, she informed Ball that he might need a new pediatrician because all children in C.H.I.L.D., Inc. programs were required to have a pediatrician to be eligible to participate.

Juanita Roberts (Roberts), another parent who had a child in the daycare program, said Ball relayed the information to her that plaintiff "was no longer able to take medical assistance through RIte Care." Brooks confirmed that she told Roberts she had heard from a patient that Dr. Mills was not taking RIte Care patients anymore. Brooks said that she gave this information to Roberts because she wanted to make sure Roberts's child still had a pediatrician, as required by the daycare program.

During this same period, Stanley was having difficulty getting records for patients of Dr. Mills who participated in the C.H.I.L.D., Inc. program. She talked with Bruce McIntyre of the Board of Medical Licensure and Discipline about her concerns and discovered that there had been other complaints raised against Dr. Mills.[1] According to Dr. Mills's brother, on October 1, 1998, Stanley told him "that something was in the works for [Dr. Mills] to lose her license."

As a consequence of the above statements by defendants, Dr. Mills filed this action for slander and tortious interference with contractual relations on September 29, 1999. In her deposition testimony, Dr. Mills acknowledged that the above communications of defendants formed the factual basis for her complaint. Later, defendants moved for summary judgment. Doctor Mills then sought to amend her complaint to include additional counts for invasion of privacy, disparagement, *prima facie* tort, and a new count for interference with contractual relations. A motion justice granted defendants' motion for summary judgment with respect to the slander count, but denied it without prejudice in regard to

---

1. These complaints eventually culminated in Dr. Mills's being suspended indefinitely in July 2001 for treating patients outside in the backyard of her office, filing a false complaint of child abuse against a parent of one of her patients, and instances of erratic psychological behavior reported by parents of her patients.

the claim for interference with contractual relations. Apparently, the motion justice wanted to allow Dr. Mills further time to factually develop the interference-with-contractual-relations count. The motion justice also denied Dr. Mills's motion to amend her complaint, except the court allowed her to add the two counts for interference with contractual relations.

In June 2002, defendants again filed a motion for summary judgment with respect to the two remaining counts for interference with contractual relations. At the hearing on the motion before a second motion justice, Dr. Mills conceded that the patients who allegedly were told to find a new pediatrician did not end up doing so. The second motion justice granted defendants' renewed motion for summary judgment. He ruled that Dr. Mills failed to show that she suffered any damages in connection with her claims for interference with contractual relations. He noted that *prima facie* proof of damages is an essential element of the claim of interference with contractual relations. He then entered an order granting summary judgment for defendants. Doctor Mills filed a notice of appeal from this order.

Thereafter, a single justice of this Court remanded the case to the Superior Court for the entry of a final judgment and ordered the parties to show cause why we should not decide this appeal summarily. Because they have not done so, we proceed to resolve the appeal at this time.

On appeal Dr. Mills argues that defendants acted with malice in committing slander and tortious interference with her contractual relations. She contends that the acts of defendants clearly were intended to hurt her professional reputation and her medical practice. She suggests that defendants' reason for telling certain parents that their physician no longer was accepting RIte Care patients does not ring true. She points out that RIte Care automatically assigns patients a new doctor if they need one. Therefore, she argues, if she had no longer been able to accept these patients, RIte Care automatically would have assigned another physician. As such, defendants need not have been concerned that certain patients would not have a pediatrician. She further argues that the issues of good faith and malice are questions of fact that cannot be decided on summary judgment. Doctor Mills also avers that discovery was not complete. She argues that the facts before the Superior Court indicated that defendants did not act in good faith. Finally, she contends that her motion to amend should have been granted in its entirety because she presented a concise statement of the claims that sufficiently put defendants on notice.

The defendants respond that the statements of Turnquist and Brooks were privileged because they were communicated in the common interest of insuring that their students still would be treated by a physician so they could continue to remain in the C.H.I.L.D., Inc. program. The defendants state that Dr. Mills failed to present any evidence of malice on the part of Turnquist, Brooks, or Stanley. Therefore, they contend, summary judgment on the slander count was appropriate. With respect to the claims of tortious interference with contractual relations, defendants argue that because their actions were justified, Dr. Mills does not have a valid claim for interference with contractual relations. In addition, defendants point out that Dr. Mills cannot maintain a cause of action for interference with contractual relations because she did not suffer any damages from the alleged misconduct.

The defendants also contend that the denial of Dr. Mills's motion to amend her complaint was proper because the new counts were not filed within the one-year

statute of limitations for words spoken and one of the new counts was not applicable to the conduct in question for this case. The defendants additionally contend that the plaintiff's motion to compel production of documents was overbroad and the documents requested bore no relationship to the issues in this case.

### Analysis

This Court reviews "the granting of a summary-judgment motion on a *de novo* basis, applying the same standards as the motion justice." *Mills v. Toselli,* 819 A.2d 202, 205 (R.I.2003) (per curiam); *see also Mills v. Rhode Island Hospital,* 828 A.2d 526, 528 (R.I.2003) (mem.). "Summary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Delta Airlines, Inc. v. Neary,* 785 A.2d 1123, 1126 (R.I.2001). "The parties opposing summary judgment may not 'rely upon mere allegations or denials in their pleadings.'" *Toselli,* 819 A.2d at 205. Instead, "'by affidavits or otherwise they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact.'" *Id.*

Doctor Mills has not provided us with a transcript of the summary-judgment hearing on September 24, 2001, during which the motion justice denied, in part, her motion to amend her complaint. "The deliberate decision to prosecute an appeal without providing the Court with a transcript of the proceedings in the trial court is risky business. Unless the appeal is limited to a challenge to rulings of law that appear sufficiently on the record and the party accepts the findings of the trial justice as correct, the appeal must fail."

*731 Airport Associates LP v. H & M Realty Associates, LLC,* 799 A.2d 279, 282 (R.I.2002) (per curiam). In *731 Airport Associates* we allowed an appeal to proceed despite the failure of the appellant to order a transcript of the trial proceedings because the trial justice had issued a detailed twenty-five page written decision and the appellant accepted the factual findings of the trial justice on appeal. *Id.* at 283.

Here, Dr. Mills's failure to order a transcript of the first summary-judgment hearing proves fatal to her appeal with respect to the partial denial of her motion to amend her complaint. This Court has held "that the decision about whether to permit a party to amend his or her pleading is one that is left exclusively to the sound discretion of the trial justice and that [this Court] shall not disturb that decision unless it constitutes an abuse of discretion." *Normandin v. Levine,* 621 A.2d 713, 715 (R.I.1993); *see also Granoff Realty II, Limited Partnership v. Rossi,* 823 A.2d 296, 298 (R.I.2003) (per curiam). It is impossible to determine whether the motion justice abused her discretion in partially denying the motion to amend because her reasons for the denial are not known. Because of the absence of the transcript, we are constrained to conclude that the trial justice did not abuse her discretion in partially denying the motion. *See Watmough v. Watmough,* 430 A.2d 1059, 1060–61 (R.I.1981).

"When bringing a defamation action a plaintiff has the burden of proving that the defendant has communicated a 'false and defamatory' statement about the plaintiff." *Cullen v. Auclair,* 809 A.2d 1107, 1109–10 (R.I.2002) (per curiam). "[I]t is for the court to decide whether a statement contains a defamatory meaning." *Wilkinson v. State Crime Laboratory Commission,* 788 A.2d 1129, 1142 (R.I.

2002). "A defamatory statement consists of '[a]ny words, if false and malicious, imputing conduct which injuriously affects a [person's] reputation, or which tends to degrade him [or her] in society or bring him [or her] into public hatred or contempt * * *.'" *Id.* To succeed in an action for defamation, the plaintiff must prove: (1) the utterance of a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence; and (4) damages. *Budget Termite & Pest Control, Inc. v. Bousquet*, 811 A.2d 1169, 1172 (R.I.2002) (per curiam); *Nassa v. Hook–SupeRx, Inc.*, 790 A.2d 368, 373 n. 10 (R.I.2002).

■■ The publisher of an allegedly defamatory statement may avoid liability if he or she is privileged to make the statement in question. *Swanson v. Speidel Corp.*, 110 R.I. 335, 339–40, 293 A.2d 307, 310 (1972) (citing *Ponticelli v. Mine Safety Appliance Co.*, 104 R.I. 549, 551, 247 A.2d 303, 305–06 (1968)). A qualified privilege exists if the publisher makes the statements in good faith and "reasonably believes that he has a legal, moral or social duty to speak out, or that to speak out is necessary to protect either his own interests, or those of third person[s], or certain interests of the public." *Ponticelli*, 104 R.I. at 551, 247 A.2d at 305–06.

■ A qualified privilege also may exist when the parties communicating share a common interest. *See Swanson*, 110 R.I. at 338–39, 293 A.2d at 309–10; *Ponticelli*, 104 R.I. at 552, 247 A.2d at 306. A "reciprocity of duty" must exist between the publisher of the statement and the recipient, such that the latter has an interest in receiving the information that corresponds to that of the publisher in communicating it. *Ponticelli*, 104 R.I. at 551, 247 A.2d at 306. If there is information that affects a sufficiently important interest of the publisher and the recipient's knowledge of the defamatory matter will be of service in the lawful protection of that interest, the communication may be privileged. Restatement (Second) *Torts* § 594 at 263 (1977). The determination of whether the privilege exists on the facts of a particular case is a question of law for the court to decide. *Ponticelli*, 104 R.I. at 555, 247 A.2d at 307.

■ To overcome such a qualified privilege, the plaintiff must prove that the person making the defamatory statements acted with ill will or malice. *DiBiasio v. Brown & Sharpe Manufacturing Co.*, 525 A.2d 489, 492 (R.I.1987). A privileged communication is, by definition, made in good faith. *See Ponticelli*, 104 R.I. at 551, 247 A.2d at 305–06. Therefore, the burden is on the plaintiff to prove the publisher made the statement with express malice. *Id.* at 556, 247 A.2d at 308. To support this burden the plaintiff must prove that the "primary motivating force for the communication was the publisher's ill will or spite." *Id.*

In this case, the granting of summary judgment on the slander claim did not constitute error because the defendants' communications were entitled to a qualified privilege. Stanley, Turnquist, and Brooks, as employees of C.H.I.L.D., Inc., shared a common interest in providing childcare for low-income families and in ensuring that their clients met the requirements for continued participation in the day-care and head-start programs. One such requirement was that the children in the program have a pediatrician. Any communications between these defendants about Dr. Mills's ability to provide continued care for RIte Care patients enjoyed a qualified privilege because the parties shared this common interest. The clients of C.H.I.L.D., Inc., likewise, had an interest in receiving this information so that

they could maintain their children's eligibility to participate in the program. Therefore, defendants' communications enjoyed a qualified privilege against Dr. Mills's defamation claim.[2]

Doctor Mills presented no evidence of malice on defendants' part that would overcome this qualified privilege. The defendants testified that they believed, in good faith, they had a duty to speak out to protect the interests of their clients by insuring that their clients' children had a qualified pediatrician. Both Turnquist and Brooks said that they did not intend to interfere with the relationship between Dr. Mills and her patients; rather, the belief that their clients needed pediatricians to continue in the C.H.I.L.D., Inc. program motivated the disclosures. Although Dr. Mills indicated that RIte Care automatically provided a new physician to patients, that assertion, even if it were true, did not create a genuine issue of material fact concerning the defendants' good-faith belief that their clients would have to secure a physician other than Dr. Mills to remain in the daycare program. Doctor Mills did not meet her burden of submitting evidence indicating that the defendants' "primary motivating force" for making the communicated statements was malice or ill will.

 We also hold that the grant of summary judgment dismissing the interference-with-contractual-relations claims was not in error. The elements necessary to prove a claim for tortious interference with contractual relations are: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) the alleged wrongdoer's intentional interference with the contract; and (4) damages resulting therefrom. *Toste Farm Corp. v. Hadbury, Inc.*, 798 A.2d 901, 906 (R.I. 2002). Only after the plaintiff establishes these *prima facie* elements does the burden shift to the defendant to prove that the interference with the contract was legally justified. *See Belliveau Building Corp. v. O'Coin*, 763 A.2d 622, 627 (R.I. 2000).

Here, Dr. Mills did not sufficiently establish the elements of her claim. Doctor Mills conceded that she did not lose any patients because of the defendants' alleged interference with her contractual relations. The children of the three individuals who spoke with the defendants about Dr. Mills continued to be her patients after the alleged interference took place. Dr. Mills provided no other evidence of damages. Therefore, we conclude, Dr. Mills did not make out a *prima facie* case of tortious interference of contract because there was no evidence upon which to find that she suffered any damages from the alleged interference.

For these reasons, we affirm the summary judgment for the defendants.

---

**2.** Doctor Mills cites in her brief Stanley's alleged statements to Stephen Mills (Dr. Mills's brother) that "something was in the works for [Dr. Mills] to lose her license." We decline to review this alleged statement as a possible source of defamation against plaintiff because she failed to raise this issue in her complaint.