**Paula KEVORKIAN**

v.

**Judith GLASS both personally and in her capacity as supervisor of Northeastern Corporation d/b/a Pawtuxet Village and/or Northeastern Corporation d/b/a Pawtuxet Village Nursing and Rehabilitation Center.**

No. 2002–152–Appeal.

Supreme Court of Rhode Island.

Jan. 22, 2007.

J. Ronald Fishbein, Esq., Providence, for Plaintiff.

Stanley F. Pupecki, Esq., for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

For the second time in this defamation action, the plaintiff, Paula Kevorkian (Kevorkian or plaintiff), appeals from the Superior Court's grant of summary judgment in favor of the defendant, Judith Glass (Glass or defendant).[1] In *Kevorkian v. Glass*, 774 A.2d 22 (R.I.2001) (*Kevorkian I*), this Court reversed the judgment of the Superior Court on the grounds that the motion justice erred when he granted summary judgment to the defendant without giving Kevorkian the ten days required

---

1. Although Judith Glass was sued in both her professional and individual capacity, she remains the only defendant in this case. Our review of the record, including plaintiff's complaint, indicates that Northeastern Corporation d/b/a Pawtuxet Village Nursing and Rehabilitation Center never was made a party to this action.

by Rule 56 of the Superior Court Rules of Civil Procedure to prepare and file a response to the motion. We vacated the Superior Court's judgment and remanded the case so that the plaintiff could be given the requisite time to prepare her response.

On remand, defendant filed a new, properly noticed, motion for summary judgment on the grounds that (1) the statement in question was not defamatory, and even if the statement was defamatory, (2) it was covered by a qualified privilege. After a hearing on the motion, a second motion justice agreed with defendant and granted summary judgment in her favor. The plaintiff timely appealed. We affirm the judgment of the Superior Court.

### Facts and Procedural History

Kevorkian is a licensed practical nurse (LPN) who began working for the Pawtuxet Village Nursing and Rehabilitation Center (Pawtuxet Village) in 1989. In April 1994, plaintiff was suspended from work for three days for insubordination. Specifically, Glass, the director of nursing at the center, alleged that plaintiff had failed to dispense necessary medication to patients at Pawtuxet Village. Kevorkian disputed her employer's allegation, and, unwilling to continue to work under the shadow of such accusations, she resigned her position with Pawtuxet Village and announced that she had secured new employment elsewhere. After she left Pawtuxet Village's employ, she began working for various other nursing homes.

Approximately two years after she resigned, Kevorkian, although she was gainfully employed at the time, contacted Mercury Medical,[2] a placement agency for nurses. Apparently, Mercury Medical asked Kevorkian if Pawtuxet Village could be contacted for a reference. Kevorkian agreed, and a document entitled "Refer-

ence Form" was faxed to Glass. Glass left the document largely incomplete, but she did fill out three parts of it before faxing it back to Mercury Medical. First, she checked a box marked "very good" for the category "appearance;" second, she answered "no" to the question "[w]ould you rehire;" and, finally, she wrote that the reason she would be unwilling to rehire Kevorkian was because of "unacceptable work practice habits." At that time, Kevorkian had no knowledge of the contents of Glass' reference.

After Glass submitted the reference form, Kevorkian began attending interviews with prospective employers set up by Mercury Medical. Perplexed that none of those facilities offered to hire her, Kevorkian began to suspect that she had received a poor reference from her former employer, Pawtuxet Village. When she discovered the contents of Glass' reference, Kevorkian's suspicions were confirmed, and she decided to file suit.

On July 11, 1997, plaintiff filed a one-count complaint alleging that, by using the phrase "unacceptable work practice habits" in the context of a work reference, defendant had defamed her by "circulating a libelous and slanderous job reference form to prospective employers." The complaint further claimed that defendant's publication of that phrase was "induced by malice, not in the legal sense but rather malice such as personal spite or ill will towards the plaintiff." The defendant answered the complaint, and both parties proceeded to discovery.

On February 23, 2000, the day that the case was reached for trial, counsel for defendant offered the court a "Pre-trial memorandum of Defendants." In that document, defendant argued that the

---

**2.** Mercury Medical is a division of Deunce Enterprises, Inc.

phrase "unacceptable work practice habits" was not capable of a defamatory meaning, and she moved that the case be dismissed. The trial justice treated Glass' motion as one for summary judgment. Although plaintiff did make an oral argument opposing the motion, she was given no opportunity to file a written response. After hearing the arguments of counsel, the trial justice granted summary judgment to defendant, and plaintiff appealed. On appeal, we reversed the decision of the Superior Court and held that Rule 56 requires that, upon a party's motion for summary judgment, the nonmoving party must be given at least ten days to file a written response and to adequately prepare for the hearing on the motion. *Kevorkian I,* 774 A.2d at 25.

On remand, defendant once again moved for summary judgment, and this time, plaintiff was given appropriate notice and adequate time to prepare her objections to that motion. At the hearing, defendant argued that (1) the statement "unacceptable work practice habits" is not capable of a defamatory meaning; and even if the statement is capable of such meaning, (2) defendant's publication of that statement to Mercury Medical was protected by a statutory privilege set forth in G.L.1956 § 28–6.4–1(c), and that plaintiff had produced no evidence that defendant's publication was induced by malice and therefore beyond the scope of that privilege. The motion justice agreed and granted summary judgment for defendant. The plaintiff timely appealed.

### Standard of Review

■■■ "In passing on a grant of summary judgment by a justice of the Superior Court, this [C]ourt conducts a *de novo* review." *United Lending Corp. v. City of Providence,* 827 A.2d 626, 631 (R.I.2003). "Only when a review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's grant of summary judgment." *Carlson v. Town of Smithfield,* 723 A.2d 1129, 1131 (R.I.1999). Further, "[t]he party opposing the motion for summary judgment 'carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions.'" *Taylor v. Mass. Flora Realty, Inc.,* 840 A.2d 1126, 1129 (R.I.2004) (quoting *United Lending Corp.,* 827 A.2d at 631).

### Analysis

■■■ "To succeed in an action for defamation, the plaintiff must prove: (1) the utterance of a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence; and (4) damages." *Mills v. C.H.I.L.D., Inc.,* 837 A.2d 714, 720 (R.I.2003) (citing *Budget Termite & Pest Control, Inc. v. Bousquet,* 811 A.2d 1169, 1172 (R.I.2002); *Nassa v. Hook–SupeRx, Inc.,* 790 A.2d 368, 373 n. 10 (R.I.2002)).

The plaintiff argues that the motion justice erred when he held that because the phrase "unacceptable work practice habits" is incapable of a defamatory meaning, plaintiff could not satisfy the first element of her defamation claim. For the purposes of this opinion, we will assume without deciding that the phrase used by defendant is defamatory. We do so, however, because we agree with the motion justice that defendant's publication of the allegedly defamatory statement was clearly covered by a qualified privilege found in § 28–

6.4–1(c).[3] Even before the statute was enacted, it was well settled in this jurisdiction that, "[t]he publisher of an allegedly defamatory statement may avoid liability if he or she is privileged to make the statement in question." *Mills,* 837 A.2d at 720. In our opinion, the critical issues in this case are whether defendant enjoyed a qualified privilege under § 28–6.4–1(c) to make the allegedly defamatory statement and, if so, whether plaintiff pointed to anything tangible that would create a genuine issue regarding whether the privilege was abrogated by the conduct of the defendant.

■■■ In the realm of defamation, privileges exist in two different forms: absolute and qualified.[4] Here, we deal only with the latter. Generally, under the judicially created doctrine of qualified privilege,

> "[a] qualified privilege exists if the publisher makes the statements in good faith and 'reasonably believes that he has a legal, moral or social duty to speak out, or that to speak out is necessary to protect either his own interests, or those of third person[s], or certain interests of the public.'" *Mills,* 837 A.2d at 720 (quoting *Ponticelli v. Mine Safety Appliance Co.,* 104 R.I. 549, 551, 247 A.2d 303, 305–06 (1968)).

In *Swanson v. Speidel Corp.,* 110 R.I. 335, 340, 293 A.2d 307, 310 (1972), a case factually similar to the matter now before us, we held that a former employer's communication to a prospective employer with regard to the work characteristics of a former employee was protected by a qualified privilege. *Id.* at 310. In that case, we said that:

> "the public interest requires that the protection of the privilege be accorded to a communication by a former employer to a prospective employer with regard to a former employee's work characteristics where the publisher acts in good faith and has reason to believe that to speak out is necessary to protect ' * * * his own interests, or those of third persons, or certain interests of the public.'" *Swanson,* 110 R.I. at 340, 293 A.2d at 310 (quoting *Ponticelli,* 104 R.I. at 551, 247 A.2d at 305–06).

■■■ The qualified privilege can be overcome, however, when the plaintiff proves "that the person making the defamatory statements acted with ill will or malice." *Mills,* 837 A.2d at 720 (citing *Di Biasio v. Brown & Sharpe Manufacturing Co.,* 525 A.2d 489, 492 (R.I.1987)).

When it enacted § 28–6.4–1(c), the General Assembly essentially codified the

---

3. General Laws 1956 § 28–6.4–1(c) provides:
   "An employer that, upon request by a prospective employer or a current or former employee, provides fair and unbiased information about a current or former employee's job performance is presumed to be acting in good faith and is immune from civil liability for the disclosure and the consequences of the disclosure. The presumption of good faith is rebuttable upon a showing by a preponderance of the evidence that the information disclosed was:
   "(1) Knowingly false;
   "(2) Deliberately misleading;
   "(3) Disclosed for a malicious purpose; or
   "(4) Violative of the current or former employee's civil rights under the employ- ment discrimination laws in effect at the time of the disclosure."

4. The major difference between the two types of privilege is that a qualified privilege may be lost in situations in which the publication exceeds the scope of the privilege or is the fruit of improper motivation. For example, a qualified privilege may be lost when the publication of an allegedly defamatory statement is induced by spite or ill will—also known as common-law malice. *See Belliveau v. Rerick,* 504 A.2d 1360, 1363 n. 1 (R.I.1986). Absolute privileges, on the other hand, are not subject to such limitations. *See* Restatement (Second) *Torts* §§ 585 through 592A (1977).

*Swanson* holding and created a statutory qualified privilege for former employers' communications to prospective employers concerning former employees.

Here, the motion justice found that defendant's statement that plaintiff had "unacceptable work practice habits" clearly was covered by the § 28–6.4–1(c) privilege. We agree. The defendant is a former supervisor of plaintiff who, at the request of both plaintiff and a placement agency (Mercury Medical), provided information about plaintiff's work performance while she was employed at Pawtuxet Village. Clearly, when she received an inquiry about Kevorkian from a prospective employer, Glass had a qualified privilege under § 28–6.4–1(c) to reveal her dissatisfaction with plaintiff's work during the time she worked at Pawtuxet Village. Thus, according to § 28–6.4–1(c), a presumption of good faith attached to defendant's publication and the burden of rebutting that presumption shifted to plaintiff.

■■■ At the summary judgment hearing, plaintiff argued that defendant's statement was made for a malicious purpose, thereby removing it from the scope of the privilege provided by § 28–6.4–1(c). However, we conclude that plaintiff did not meet the burden imposed on her by Rule 56 of directing the court to specific facts that raise a genuine issue about whether defendant made the publication for a malicious purpose. The plaintiff argues that the issue of whether a qualified privilege is abrogated by the malicious intentions of the publisher of a defamatory statement presents a question of fact to be resolved by the fact-finder at trial, and not by the judge on a motion for summary judgment.

In our opinion, plaintiff misstates the summary judgment standard.

■■■ Although, it is true that, "[w]hether ill will or spite is the incentive for a publication is, * * *, a fact question and is ordinarily for the fact-finder to decide * * *[,]" *Swanson*, 110 R.I. at 341, 293 A.2d at 311, to overcome a motion for summary judgment based on a qualified privilege, a plaintiff must point to *some* specific facts in the record that raise a genuine issue relative to the existence of such ill will.[5] Indeed, it is axiomatic that a party opposing a motion for summary judgment "will not be allowed to rely upon mere allegations or denials in [the] pleadings. Rather, by affidavits or otherwise [the opposing party has] an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." *Providence Journal Co. v. Convention Center Authority*, 774 A.2d 40, 46 (R.I.2001) (quoting *Bourg v. Bristol Boat Co.*, 705 A.2d 969, 971 (R.I.1998)); *Gallo v. National Nursing Homes, Inc.*, 106 R.I. 485, 488, 261 A.2d 19, 21 (1970) ("a party opposing a motion for summary judgment is not entitled to hold back his evidence until trial nor is he entitled to a trial on the possibility that an issue of material fact might turn up at the trial").

We are aware that it has been frequently held that when a decision depends upon a person's state of mind, as it does here, summary judgment is appropriate in only the most unusual cases. *See, e.g., Sammons v. Taylor*, 967 F.2d 1533, 1545 (11th Cir.1992); *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979); *Wauchop v. Domino's Pizza, Inc.*, 832 F.Supp. 1577, 1580 (N.D.Ind.1993). "This is so simply because in such cases it is

---

**5.** We noted as much in *Belliveau*, when we stated that once a qualified privilege is established, it is then necessary "to determine whether the plaintiff [has] raised, in opposi-

tion to the motion for summary judgment, a genuine issue of material fact in respect to common-law malice." *Belliveau*, 504 A.2d at 1363.

difficult to meet the requirement of the rule that the moving party demonstrate the absence of a genuine issue of fact." Robert B. Kent et al, *Rhode Island Civil and Appellate Procedure*, § 56:2 (2006). But, in the case of *The Washington Trust Co. v. Fatone*, 104 R.I. 426, 244 A.2d 848 (1968), we quoted with approval language contained in the Barron & Holtzoff treatise with respect to the federal rule which instructs that, as long as there has been ample opportunity for discovery, summary judgment is warranted in those situations in which the party opposing the motion cannot point to any facts at all that raise a genuine issue with respect to the moving party's state of mind:

"A court should be cautious in granting a motion for summary judgment where state of mind is involved, or where the facts are peculiarly in the knowledge of the moving party, and should be sure that the party opposing the motion has had a fair opportunity to use the discovery process to probe his opponent's mental state and to examine the facts his opponent has at hand. But if, after such an opportunity, the opposing party cannot point to anything tangible which will create a genuine issue of material fact, the motion should be granted." *Fatone*, 104 R.I. at 435–36, 244 A.2d at 853 (quoting Barron & Holtzoff, *Federal Practice & Procedure*, § 1232.2 at 78 (1967 Supp.)).

After a careful review of the record, we agree with the motion justice that plaintiff has pointed to no facts that, taken together with the other papers in the case, show that defendant's publication of the defamatory remark was motivated by malice toward plaintiff.[6]

On no less than three occasions, the motion justice asked plaintiff's counsel to point to some facts in the record demonstrating ill will on the part of defendant to rebut the presumption of § 28–6.4–1(c). The plaintiff failed to do so on each occasion.

At the hearing below, the following colloquy took place:

"[DEFENSE COUNSEL]: Well, your Honor, under Rule 56, the standard required for the Plaintiff is for the Plaintiff to present some information for the Court that would rebut that presumption. The Plaintiff has simply failed to do that, your Honor.

"THE COURT: What do you say?

"[PLAINTIFF COUNSEL]: We have presented references to deposition transcripts. * * *."

Our review of the record has revealed that no such references ever were presented to the court.

Later, the court again requested that plaintiff produce some facts to overcome the § 28–6.4–1(c) presumption of good faith:

"THE COURT: What have you done, * * * for your client to rebut the so-called negative reference, the malice?

"[PLAINTIFF COUNSEL]: Well, the issue of 28–6.4(c), its [*sic*] stated in that brief that the deposition transcript and interrogatory answers where my client's contention, and I think you're right, it is an issue at trial, whether she informed them that she was—

---

**6.** We note that plaintiff did not submit a memorandum to support her objection to defendant's motion for summary judgment. This omission placed plaintiff in a peculiar position: to rebut the good faith presumption attached to defendant's publication by § 28–6.4–1(c), plaintiff's only opportunity to point out specific facts showing malice was to do so orally at the hearing.

"THE COURT: What is your conclusion from my question, when you say you think I'm right?

"[PLAINTIFF COUNSEL]: When she went there after they suspended her they said, "No, no, we don't want you to leave, we are only trying give [sic] you a good scare," and also the deposition of Judith Glass that we suspected that she wasn't passing out the medication, not that we knew, 'We suspected.'"

Apparently, it was plaintiff's contention, as it is here on appeal, that if defendant considered plaintiff's work habits acceptable enough not to fire her, then a reasonable inference may be drawn that her negative reference must have been made with malice. It is our opinion, however, that plaintiff's contention constitutes nothing more than a conclusion devoid of factual foundation, and that such an inference would not be reasonable.

Finally, the hearing justice, after laying out the burden shifting required by § 28–6.4–1(c), requested for a third time that plaintiff point to evidence of malice by defendant:

"THE COURT: * * * under that statute, the privilege is there. Your burden would be to come forward and rebut that presumption of good faith, and it's rebuttable only upon a showing by a preponderance of the evidence, that the information disclosed was false. That it was disclosed for a malicious purpose. * * * The problem is, what evidence do you have at this point? [Plaintiff's counsel] has not rebutted that presumption. He has the burden.
"* * *

"THE COURT: Maybe I should reverse that and ask him, what evidence have you put in the record so far by way of depositions, etc. to rebut this privilege in the statute?

"[PLAINTIFF COUNSEL]: Your Honor, the statute has been examined by case law. When you examine *Beattie v. Fleet*, when you examine *Belliveau v. Rerick*, what the Supreme Court says is you can say a defamatory opinion. What you can't do is you can't leave out the underlying facts to enable the recipient of that reference to determine for themselves what's acceptable * * *." [7]

Despite the court's repeated requests, plaintiff was unable to point to "'anything tangible which [would] create a genuine issue of material fact,'" *Fatone*, 104 R.I. at 436, 244 A.2d at 853, concerning defendant's state of mind.

We are convinced that plaintiff was given "'a fair opportunity to use the discovery process to probe [her] opponent's mental state and to examine the facts [her] opponent [had] at hand.'" *Fatone*, 104 R.I. at 435–36, 244 A.2d at 853.

■ Section 28–6.4–1(c) requires that if the motion justice finds that a qualified privilege exists with respect to the publication of a particular statement, he also must presume that the statement was made in good faith. The presumption is rebuttable; nevertheless, plaintiff bears the burden of pointing to specific facts that would show that a genuine issue existed with respect to the validity of that presumption. Neither bald assertions nor ephemeral inferences will suffice. For, as we stated in the opening language of *Bourg v. Bristol Boat Co.*, 705 A.2d 969 (R.I.1998):

**7.** Though it is irrelevant to the disposition of this case, plaintiff is incorrect in her assertion that § 28–6.4–1(c) has been "examined" by this Court. This Court has yet to interpret or apply § 28–6.4–1(c) in any case prior to this one. Both *Belliveau,* and *Beattie v. Fleet National Bank,* 746 A.2d 717 (R.I.2000), deal exclusively with the issue of whether opinions may be actionable as defamation. Section 28–6.4–1 is not mentioned in either opinion.

"When a motion for summary judgment has been filed and properly supported, a litigation death knell begins to toll. Unless the opposing part[y] * * * can still this doleful dirge by showing the existence of a genuine issue of material fact, all legal clamor will soon subside into a final judgment for the movant and the [opponent's] case will be pronounced dead in the water." *Id.* at 970.

The plaintiff, as the party opposing summary judgment in this case, did not carry her burden, and, therefore, the motion justice appropriately pronounced her case "dead in the water."

### Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court, and return the record of this case to it.