HENRY B. METCALF *vs.* THE TIMES PUBLISHING COMPANY.

PROVIDENCE—JULY 27, 1898.

PRESENT : Matteson, C. J., Stiness and Tillinghast, JJ.

The law of England seems now to be that a full and fair report of proceedings in an open court upon a matter standing for final decision, even though the inquiry may be preliminary and *ex parte*, is privileged.

In this country the rule is much the same—that the privilege attaches to fair reports of judicial proceedings, even if preliminary and *ex parte*.

But this rule gives no license to publish libelous matter simply because it is found in the files of a court.

The press should have the freest scope ; but as a scandal-monger, should be held to the most rigid limitation.

One party is allowed to make his charges against another for adjudication, and as such they are privileged ; but the right to make charges gives no right to others to spread them, although when the charges come up for adjudication a different rule prevails.

The provisions of our statute relating to proceedings of the court "in chambers" are simply to distinguish such proceedings from those of the Appellate Division sitting *in banc ;* therefore, an application to a single judge for an *ex parte* injunction is a "proceeding in court."

A plea in an action for libel averred that the publication was a part of a bill in equity and petition for preliminary injunction ; so far as shown this part of the bill was its four paragraphs charging fraud ; the plea did not aver that the publication was a full and fair report of the allegations and facts set out in the bill, but assumed that, as the bill had been before a judge in a judicial proceeding, the publication of a part of it was justifiable :—

*Held*, that this was not sufficient; if a garbled report of a trial is not privileged, much less should unfair extracts from pleadings be privileged.

TRESPASS ON THE CASE for libel. Heard on demurrer to defendant's special plea in justification.

STINESS, J.    The plaintiff sues to recover damages for a libel alleged to have been printed in "The Evening Times," a newspaper in Pawtucket, published by the defendants. The declaration sets out that upon the filing of a bill in equity by Annie Campbell against the plaintiff and other associates in business, charging them with having conspired to defraud her deceased husband, Duncan H. Campbell, of certain letters patent of this and foreign countries, and, upon the order by a justice for citation and an *ex parte* preliminary injunction, until hearing, the defendants published the charges of fraud, to the damage of the plaintiff.

The defendants plead specially that the said Evening Times was a public newspaper; that they published said matters because they believed them to contain information which it was important for the public to know ; that said matters were a part of the public records of this court, upon which there had been judicial action, which, denying all malicious intent, it was lawful for them to do.

The plaintiff demurs to the plea.

The question of privileged publications is one that has been much considered, and certain lines may now be said to be well established.

In *The King* v. *Wright*, 8 D. & E. 293, in 1799, which was an application for a criminal information for libel growing out of the *Horne* v. *Tooke* case, it was held that a report of the House of Commons could be published, even though it reflected on the character of an individual.

*Hoare* v. *Silverlock*, 9 C. B. 20, was to the effect that a full and impartial report of a trial in a court of justice could be published.    Some stress was laid upon the distinction between a full trial and an *ex parte* proceeding, which, however, was not necessary to the decision of this case.

*Davison* v. *Duncan*, 7 E. & B. 229, held that a fair report of defamatory matter uttered in a public meeting was not privileged.

*McGregor* v. *Thwaites*, 3 B. & C. 24 (10 E. C. L. 6), 1824, held that proceedings before a magistrate, not judicial but advisory, were not privileged, and *Duncan* v. *Thwaites*, 3 B.

& C. 556 (10 E. C. L. 179), extended the rule to proceedings which took place in the course of preliminary inquiry before a magistrate.

*Lewis* v. *Levy*, E. B. & E. 535, questioned the decision in *Duncan* v. *Thwaites*, and although the case was understood to hold that the privilege of a fair report extended to proceedings taking place publicly before a magistrate on the preliminary investigation of a criminal charge, terminating in the discharge of the prisoner, yet the court did not expressly decide that question.

*Reg.* v. *Gray*, 10 Cox Crim. Cas. 184, carried the rule to this extent, but the court was not unanimous in the decision.

In *Usil* v. *Hales*, 47 L. J. (1878) 323, Lord Coleridge, C. J., fully adopted the apparent rule of *Lewis* v. *Levy*, and Lopes, J., concurring, said : "There are authorities which, until they are carefully examined, would seem to support the contention that an *ex parte* proceeding in court is not privileged. So far as I can ascertain, these are cases where the proceeding was preliminary, and where there was no final determination at the time of the alleged libelous report." In *Wason* v. *Walter*, L. R. 4 Q. B. 73, the dictum of Cockburn, C. J., goes further, that fair reports of all *ex parte* proceedings are privileged.

*Ryalls* v. *Leader*, L. R. 1 Exch. 296, held that the examination of a debtor in custody, before a registrar in bankruptcy, was a proceeding before a public court, and hence privileged.

In *Kimber* v. *The Press Association*, 1 Q. B. Div. (1893) 65, the court went to the full length of holding that the publication of a fair report of proceedings held in open court, though preliminary and *ex parte*, is privileged. This case is quite remarkable from several facts. It was an application to magistrates, specially called together by the clerk, for a summons to one charged with perjury, and no evidence was given under oath. The application was granted, and one of the principal questions argued was whether it was an open court. It was also held that the matter was one for final determination, because if it was refused it would be final, and

if it was granted there would be a further inquiry and the matter might go on to trial.

Following the outline of leading decisions, in which there has been a gradual progress, the law of England seems now to be that a full and fair report of proceedings in an open court, upon a matter standing for final decision, even though the inquiry may be preliminary and *ex parte*, is privileged. See opinion of Kay, L. J., in *Kimber* v. *Press Association*.

In this country the law has been declared in very much the same way. In *Cincinnati Gazette* v. *Timberlake*, 10 Ohio St. 548, 1860, it was held that privilege does not extend to the publication of preliminary proceedings merely, which are of a purely *ex parte* character. The opinion, however, follows the earlier English cases.

*Barber* v. *St. Louis Dispatch*, 3 Mo. Ap. 377, laid down this rule: "Where a court or public magistrate is sitting publicly, a fair account of the whole proceedings, uncolored by defamatory comment or insinuation, is a privileged communication, whether the proceedings are on a trial or on a preliminary and *ex parte* hearing. But the very terms of the rule imply that there must be a hearing of some kind. In order that the *ex parte* nature of the proceeding may not destroy the privilege—to prevent such a result—there must be at least so much of a public investigation as is implied in a submission to the judicial mind, with a view to judicial action." In this case a petition for divorce had been filed, but it had not been presented to a court at any sitting, with a view to judicial action.

In *Park* v. *Detroit Free Press*, 72 Mich. 560, it was held that the publication of the pleadings or other contents of the files in a private suit before hearing, or action in open court, is not privileged.

*McBee* v. *Fulton*, 47 Md. 403, held that an examination before a magistrate, whether the accused permits them to be *ex parte* or whether he makes defence, is privileged, upon the ground that it is a proceeding before a public court of justice.

In New York a statute of 1854, limiting actions for the

publication of a fair and true report of judicial proceedings to cases of malice, was held to be declaratory of the common law, in *Ackerman* v. *Jones*, 37 N. Y. Super 42, and that under the statute an *ex parte* affidavit presented to a police magistrate to obtain a search warrant was privileged.

*Cowley* v. *Pulsifer*, 137 Mass. 392, contains a full review of this subject by Mr. Justice Holmes.    It was an action for libel in publishing a petition for the removal of an attorney from the bar, which had not been presented to the court. The question, therefore, was quite different from the one before us, but the court assumes the rule, admitted by the plaintiff in that case, that the privilege attaches to fair reports of judicial proceedings, even if preliminary and *ex parte*.

The rule, as thus stated, seems now to be settled as the law, both in England and in this country, and it makes a clear line of distinction between publications which are lawful and those which are not.

It gives no license to publish libelous matter simply because it is found in the files of a court.    As a publisher of news and items of public importance the press should have the freest scope; but as a scandal-monger it should be held to the most rigid limitation.    If a man has not the right to go around to tell of charges made by one against another, much less should a newspaper have the right to spread it broadcast and in enduring form.    It is necessary to the ends of justice that a party should be allowed to make his charges against another, for adjudication, even though they may be of a libelous character, and as such they are privileged, the injured party having a remedy for malicious prosecution when they are made maliciously or without probable cause. But the right of a party to make charges gives no right to others to spread them.    When the charges come up for adjudication, however, although their publication may be as harmful and distressing to the person accused as if they had been published before their consideration by a court, a different rule applies.    Individual feelings are no longer considered, for the reason, as stated by Judge Holmes:    "It is desirable that the trial of causes should take place under the

public eye, not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed."

Accepting and applying the rule, as we understand it to be, two questions arise :   First, does the plea set forth a proceeding before a court, and, second, does it aver it to be a full and fair report.

As to the first question, it sets out an application in chambers, upon a motion for an *ex parte* injunction before and until a hearing.   Ordinarily the only consideration which is, or can be, given to it is whether the bill states an exigency upon its face sufficient to warrant an order to hold property *in statu quo*, until a hearing can be had.   This is indeed a judicial matter, but of the most insignificant sort and very near to the border line.   It is a matter submitted to a judge, and he acts upon it.   It is within the rule and the cases which we have referred to, notably that of *Kimber* v. *Press Association, supra*.   If this was not judicial action it would be difficult to say what would be, short of a full trial of the case.   Although the motion was in chambers, still, under our practice, as all such motions and interlocutory orders are made in chambers, technically we cannot say that it was not in court.   The statutes provide for such motions to be made to the court, and the provisions about the court "in chambers" are simply to distinguish such proceedings from those of the Appellate Division sitting *in banc*.   We therefore decide that the plea sets out a sufficient statement of a proceeding in court.

As to the second question, to bring the plea within the rule of full and fair report, the plea is bad upon its face.   It avers that what is published was only a part of the bill, and this part, so far as shown, was only the four paragraphs charging fraud.   It does not aver that the defendants gave a full and fair report, even in substance, of the allegations and facts set out in the bill.   The plea rests upon the fact

that, as the bill had been before a judge in a judicial proceeding, it was a justification in publishing a part of it. That is not enough. If a garbled report of a trial, which may result in a vindication of one accused, is not privileged, much less should unfair extracts from pleadings be privileged. This doctrine is strongly set forth in caustic words by Endlich, J., in *Com. v. Costello*, 1 Pa. Dist. Rep. 745–752: "I prefer to rely upon the proposition, which seems to me incontestable, that, whether the proceeding be in a court of record or not, finished or unfinished, *ex parte* or otherwise, no individual and no newspaper has the right to publish mere arbitrary selections consisting of those portions which impute crime or moral turpitude to, or cast ridicule or odium upon, the party to whom they refer, and commending themselves only by what is sometimes called spiciness, but is more properly denominated filth, or by reason of the fact that they tickle the morbid appetite of perverted human nature, which delights in the spectacle of another's disgrace."

Upon this ground, therefore, the demurrer to the plea is sustained, and the case will be remitted to the Common Pleas Division for further proceedings.

*Hugh J. Carroll and William H. Greene*, for plaintiff.

*J. Osfield, Jr., Stephen A. Cooke and Louis L. Angell*, for defendant.