Stephen ALVES

v.

HOMETOWN NEWSPAPERS, INC.,
d/b/a The Kent County Daily
Times et al.

No. 2003–181–Appeal.

Supreme Court of Rhode Island.

Aug. 4, 2004.

Christopher E. Friel, Esq., Providence, for Plaintiff.

Jeffrey S. Brenner, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, and SUTTELL, JJ.

## OPINION

PER CURIAM.

Are litigants in Rhode Island SLAPP-happy? This is the second case in as many months that calls upon us to determine whether summary judgment was granted properly in favor of the defendants when the defendants asserted an affirmative defense under General Laws 1956, chapter 33 of title 9, the Limits on Strategic Litigation Against Public Participation Act (the anti-SLAPP statute). The plaintiff, Stephen Alves (Alves or plaintiff), appeals from a Superior Court grant of summary judgment in favor of the defendant, Alan G. Palazzo (Palazzo or defendant), on his anti-SLAPP defense, including an award of attorneys' fees and costs.

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After considering the arguments of counsel and examining the record and the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we summarily affirm the judgment entered in the Superior Court.

## Facts and Procedural History

The facts are largely undisputed. At the time this action was filed, Alves represented the 19th Senatorial District in the Rhode Island General Assembly, and he also served on the Town of West Warwick's school building committee (building committee). Palazzo is a resident of West Warwick. The complaint in this case arose out of remarks made at public meetings and a series of letters to the editor published by Hometown Newspapers, Inc., d/b/a The Kent County Daily Times (Daily Times), and penned by the duo of Alan G. Palazzo and William Palazzo,[1] concerning the West Warwick Town Council's (town council) and School Committee's (school committee) handling of a proposed school building project (the project). This appeal involves only those claims that concern Alan G. Palazzo.

Alves filed a nine-count complaint, five counts of which were directed at acts that defendant conducted. Count 1 alleged that Palazzo libeled plaintiff in a "Letter to the Editor" of the Daily Times on October 1, 2001. Count 3 alleged that Palazzo again libeled plaintiff in a "Letter to the Editor" of the Daily Times on October 9, 2001. Count 5 alleged that Palazzo slandered plaintiff at a school committee meeting on September 26, 2001. Count 6 alleged that Palazzo maliciously placed plaintiff in a false light before the public by preparing the letter of October 1, 2001. Count 8 repeated a false-light allegation for the letter of October 9, 2001. The plaintiff appended copies of the published letters to the complaint.

Palazzo filed a motion to dismiss the complaint pursuant to Rule 12(b)(6)[2] of the Superior Court Rules of Civil Procedure, and seeking an order for costs and attorneys' fees pursuant to § 9–33–2(d). In a memorandum of law accompanying the motion, Palazzo argued that plaintiff's complaint constituted a "SLAPP suit," seeking to punish Palazzo for writing letters to the editor discussing public matters and criticizing plaintiff. Palazzo maintained that his letters merely were commentary "that is typical of opinions regarding public events that aired in any public forum such as a town council meeting or a newspaper." Palazzo also alleged that the complaint did not comply with Rule 8(a) of the Superior Court Rules of Civil Procedure because it did not identify the specific statements published by Palazzo that allegedly were false.

In his memorandum opposing the motion to dismiss, Alves argued that Palazzo and the other defendants were adequately apprised of the charges against them. Alves further asserted that Palazzo's activities were not protected under the anti-SLAPP statute because it was not enacted "to cloak false accusations of criminal activity in legislatively-created immunity." In addition to asserting that Palazzo's let-

---

**1.** The complaint naming defendant Hometown Newspapers, Inc., was dismissed on May 14, 2002. William Palazzo is not a party to this appeal. According to the Superior Court docket listings, the claims against William Palazzo were settled on January 26, 2004, and the case was dismissed with prejudice.

**2.** William Palazzo joined in this motion.

ters to the editor constituted actionable defamation, Alves asserted that after the school committee meeting on September 26, 2001, Palazzo's alleged remark accused Alves of "rigging the bids," a crime constituting slander *per se.* Appended to his memorandum was an affidavit of Jeanne-Marie DiMasi (DiMasi), chairwoman of the school committee, which attested to her overhearing Palazzo accusing Alves of "rigging" the bid for a new school. Alves also attached Palazzo's letters to the editor.

The motion was heard first on January 28, 2002. At that time, the hearing justice ruled that the motion should be considered as a motion for summary judgment instead of a motion to dismiss pursuant to our decision in *Hometown Properties, Inc. v. Fleming,* 680 A.2d 56, 63 (R.I.1996) (motion for summary judgment is "appropriate motion" in anti-SLAPP case to allow hearing justice to consider information extrinsic to the pleadings). The hearing justice continued the motion for a subsequent hearing to give the parties a reasonable opportunity to reply to the motion as a motion for summary judgment. While this motion was pending, plaintiff filed an amended complaint on March 6, 2002, in which he identified Palazzo's specific statements that allegedly libeled and slandered him and cast him in a false light.

Palazzo's letters were a self-styled "series of informational updates relative to our Town Council and SBC's handling of the 'Natick' School project."[3] Palazzo's letter of October 1, 2001, was a strongly worded warning to West Warwick taxpayers to look disfavorably on the potential increased cost of the project from $10.5 million to $12 million. Palazzo printed questions he put to the town council and excerpted some of the answers. The questions covered topics such as the council's plans in case developing the site went over budget and whether the taxpayers would be responsible for additional money if the project site had to be moved. In the letter, Palazzo also questioned the wisdom of spending $1.5 million for a school site. In the context of urging the taxpayers to become concerned about this issue, he wrote, "it is your hard earned tax dollars that are being spent in this manner. Yes, we need a new school but perhaps you might ask Mr. Rousselle, Sen. Alves, Ms. DiMasi et al., why the fiasco?" With respect to this letter, plaintiff based his amended complaint on the following statements:

> "I've also heard from a member of the Council that Sen. Alves seems to be exerting a lot of pressure to keep this project moving along.
>
> " * * *
>
> "I challenge anyone involved with this project today, especially Mr. Rousselle, Sen. Alves and Ms. DiMasi to deny the facts as I have presented them."

Palazzo's letter of October 9, 2001, to the editor continued to criticize the cost of the project. He took issue with a proposed new site for the school and questioned whether the town "really looked into the site from a Geo-technical perspective." Palazzo alleged that the town was paying $425,000 more for a construction manager than was originally noted at a school committee meeting in November 2000. He also said that additional costs would be associated with using Eric Ahlborg as the construction manager on the project. He further noted that the council president, Mr. Rouselle, was the guest of honor at a recent fundraiser that Alves hosted. With respect to the letter of October 9, 2001,[4]

---

3. "SBC" is an acronym for school building committee.

4. In his supplemental memorandum, Palazzo draws our attention to a deposition of Alves,

plaintiff based his amended complaint on the following statements:

"At several SBC and Town Council Meetings, I've noticed what I'd call a 'close' relationship between Sen. Alves and Mr. Eric Ahlborg. If you have attended some of these same meetings, you may have also taken note of this. Has anyone on our Council also taken note and asked some hard questions? Given the progress of this project to date and the possible additional costs to the taxpayers, isn't it prudent to at least ask?

"Think about it—could it be possible that the taxpayers of this town are being used to bankroll and advance the personal and financial agendas of a 'chosen few'?

"I challenge anyone involved with this project to date, especially Mr. Rouselle, Sen. Alves and Ms. DiMasi, to deny the facts as I have presented them."

In both his original and amended complaints, Alves alleged that Palazzo slandered him on or about September 26, 2001, "while speaking at the Town of West Warwick School Building Committee Meeting." Alves did not specify the particular slanderous statements in either complaint, but instead incorporated the newspaper statements included in the previous counts by reference. In response, Palazzo denied that he spoke at the meeting on September 26, 2001, and submitted minutes from that meeting to support that. Alves did not directly hear Palazzo say anything defamatory at that meeting, but submitted an affidavit from DiMasi. She averred that "after" the committee meeting, she heard Palazzo say that Alves had "rigged" the bids on the project. However, Palazzo attested that DiMasi could not have heard

him say anything after the meeting because he left the meeting just when it ended because of family obligations.

Counsel for the parties argued their respective positions on March 8, 2002, and on March 14, 2002, the hearing justice filed a decision granting Palazzo's motion for summary judgment on counts 1, 3, 6, and 8 of the amended complaint. She ruled in her decision that the anti-SLAPP statute barred plaintiff's claims. In so doing, she wrote, "With respect to A. Palazzo's letters to the editor of the Daily Times, it is clear that the activity was of a type envisioned by the Legislature in enacting * * * § 9–33–1 et seq." She observed that it was Alves's burden to prove that both of Palazzo's letters were objectively and subjectively baseless. In applying the anti-SLAPP statute, she found as follows:

"Although Plaintiff bases his action on a few statements lifted from the letters, the Court must consider the publications in their entirety to determine whether they rise to the level of sham. In his letters, A. Palazzo addressed a matter that was under review and consideration by a local governmental body. The statements addressed an issue of public concern in his community. He sent the letters to the editor of a local newspaper. A. Palazzo expressed concern over the potential increased cost of the Natick school project. His statements concerning Plaintiff related to his position as a School Building Committee member and his alleged role with respect to the project."

The motion justice reasoned that because Palazzo's statements related to an issue of public concern and were not objectively

---

in which he testified that "the whole article doesn't bother me, really." We note, however, that the deposition occurred on January

30, 2003, after entry of the Super. R. Civ. P. 54(b) judgment, and therefore was not part of the record before the motion justice.

baseless, they were entitled to conditional immunity under the statute.

The motion justice also awarded Palazzo costs and reasonable attorneys' fees and ordered counsel to file affidavits specifying the costs and legal fees that they incurred by working on Palazzo's case. On March 27, 2002, Palazzo filed a motion for final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. That motion was granted in an order entered on September 12, 2002. That same order also awarded Palazzo attorneys' fees in the amount of $17,217.25, and costs of $154.74. After that order was entered, there were a number of other hearings on the issue of Palazzo's attorneys' fees. On October 11, 2002, a judgment of $17,371.99 was entered for Palazzo pursuant to Rule 54(b), from which plaintiff timely appealed.

## Discussion

On appeal, Alves asserts that the hearing justice erred in finding that Palazzo's letters of October 1, 2001, and October 9, 2001, were protected by the anti-SLAPP statute. Specifically, Alves asserts that the two letters, when read together, constitute defamation because Palazzo "did not outline any factual basis for his conclusions that Alves either bankrolled and advanced the personal and financial agendas of a chosen few or had a close relationship with the project manager." Furthermore, Alves asserts that the hearing justice erred by denying him an opportunity to pursue discovery into whether Palazzo's accusations against him were made with actual malice. An examination of Alves's various submissions reveals that he appeals the summary judgment only concerning the libel and false-light counts from his amended complaint, not the slander count. At oral argument, Alves further appealed the award of costs and attorneys' fees to Palazzo. However, because Alves did not raise this issue in either of his Article I,

Rule 12A of the Supreme Court Rules of Appellate Procedure statements, he has waived his right to contest the size of the award for attorneys' fees and costs. *See Superior Group Ventures, Inc. v. Apollo II Sign Corp.,* 712 A.2d 359, 360 (R.I.1998) (per curiam) ("Rule 16(a) of the Supreme Court Rules of Appellate Procedure provides that issues not briefed will be deemed waived.").

■ We review *de novo* a Superior Court grant of summary judgment. *Roe v. Gelineau,* 794 A.2d 476, 481 (R.I.2002). We will affirm the judgment only if, after reviewing the evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Id.*

## The Elements of Defamation

■ A plaintiff in a defamation action carries a substantial burden. This burden is even more substantial when a plaintiff is a public official. In bringing a claim for defamation, a plaintiff bears the burden of proving that a defendant communicated a "false and defamatory" statement about him or her. *Beattie v. Fleet National Bank,* 746 A.2d 717, 721 (R.I.2000). In proving that a statement is defamatory, a plaintiff "must show that the statement is 'false and malicious, imputing conduct which injuriously affects a [person's] reputation, or which tends to degrade him [or her] in society or bring him [or her] into public hatred and contempt * * *.'" *DiBattista v. State,* 808 A.2d 1081, 1088 (R.I. 2002) (quoting *Swerdlick v. Koch,* 721 A.2d 849, 860 (R.I.1998)). Furthermore, the question of whether a particular statement or conduct alleged to be defamatory is, in fact, defamatory is a question of law for the court to decide. *Id.* When considering whether a statement or conduct is defama-

tory, the court must take into account "the context of the statement in which the publication occurs and the plain and ordinary meaning of the words in the community in which the publication occurred." *Id.* (citing *Swerdlick,* 721 A.2d at 859–60).

■ This Court has recognized that there is no wholesale exemption of opinion pieces from the purview of defamation claims. *Beattie,* 746 A.2d at 721. However, a defamatory publication that consists of a statement in the form of opinion is "actionable if and only if 'it implies the allegation of undisclosed defamatory facts as the basis for the opinion.'" *Id.* (quoting *Healey v. New England Newspapers, Inc.,* 555 A.2d 321, 324 (R.I.1989)). "As a result, if the non-defamatory facts underlying an expressed derogatory opinion are publicly known or disclosed, the opinion, justified or unjustified, is privileged as a matter of law." *Id.* (citing *Hawkins v. Oden,* 459 A.2d 481 (R.I.1983)). Such statements are privileged because "[w]hen the facts underlying a statement of opinion are disclosed, readers will understand they are getting the author's interpretation of the facts presented; they are therefore unlikely to construe the statement as *insinuating* the existence of additional, undisclosed [defamatory] facts." *Id.* (quoting *Standing Committee on Discipline v. Yagman,* 55 F.3d 1430, 1439 (9th Cir.1995)).

■ "The elements of a cause of action for defamation are: (1) the utterance of a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence; and (4) damages * * *." *Cullen v. Auclair,* 809 A.2d 1107, 1110 (R.I.2002) (per curiam) (quoting *Nassa v. Hook–SupeRx, Inc.,* 790 A.2d 368, 373 n. 10 (R.I.2002)). When a plaintiff in a defamation action is a public official, and the action relates to his official conduct, he must prove "that the state-

ment was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). To satisfy this test, plaintiff will have to prove more than general hostility or mere ill will because "actual malice is not synonymous with common-law spite or ill will." *Major v. Drapeau,* 507 A.2d 938, 941 (R.I.1986). "A public figure defamation plaintiff meets the requisite burden of proof by demonstrating actual malice by clear and convincing evidence." *Cullen,* 809 A.2d at 1110 (citing *Lyons v. Rhode Island Public Employees Council 94,* 559 A.2d 130, 134 (R.I.1989)). However, a plaintiff must first prove that there is a "false statement of fact." *Id.* (quoting *Old Dominion Branch No. 496, National Association of Letter Carriers, AFL–CIO v. Austin,* 418 U.S. 264, 284, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974)).

■ As with a defamation claim, the question of whether a statement portrays an individual in a false light under G.L.1956 § 9–1–28.1(a)(4) is a matter of law to be determined by the court. *Cullen,* 809 A.2d at 1112. An allegation that an individual has been portrayed in a false light is an instance of a violation of the more general right to privacy. Section 9–1–28.1 creates the right to privacy and a cause of action for false light:

> "**Right to privacy—Action for deprivation of right.**—(a) *Right to privacy created.* It is the policy of this state that every person in this state shall have a right to privacy which shall be defined to include any of the following rights individually:
>
> * * *
>
> (4) The right to be secure from publicity that reasonably places another in a false light before the public;

(i) In order to recover for violation of this right, it must be established that:

(A) There has been some publication of a false or fictitious fact which implies an association which does not exist;

(B) The association which has been published or implied would be objectionable to the ordinary reasonable man under the circumstances[.]"

■■■■■ To prevail in an action under § 9–1–28.1(a)(4), a plaintiff must prove that "[t]here has been some publication of a false or fictitious fact which implies an association which does not exist; [and][t]he association which has been published or implied would be objectionable to the ordinary reasonable [person] under the circumstances." *Cullen*, 809 A.2d at 1112 (quoting *Swerdlick*, 721 A.2d at 861). Furthermore, a false-light action is distinguishable from defamation because it "requires that a plaintiff be 'given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position.'" *Id.* (quoting *Swerdlick*, 721 A.2d at 861 and Restatement (Second) *Torts*, § 652E, cmt. *b* at 395 (1976)). Moreover, for a plaintiff properly to state a cause of action for false light, he or she must prove that "there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable [person] in his [or her] position." *Id.* (quoting *Swerdlick*, 721 A.2d at 861–62 and Restatement (Second) *Torts*, § 652E, cmt. *c* at 396).

### The Anti–SLAPP Defense

■■■■ The anti-SLAPP statute was enacted to prevent vexatious lawsuits against citizens who exercise their First Amendment rights of free speech and legitimate petitioning by granting those activities conditional immunity from punitive civil claims. *See Hometown Properties, Inc.*, 680 A.2d at 61. The anti-SLAPP statute, § 9–33–1, contains an explicit findings section that elucidates this purpose:

"**Findings.**—The legislature finds and declares that full participation by persons and organizations and robust discussion of issues of public concern before the legislative, judicial, and administrative bodies and in other public fora are essential to the democratic process, that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances; that such litigation is disfavored and should be resolved quickly with minimum cost to citizens who have participated in matters of public concern."

The next section of the statute, § 9–33–2, explains that the grant of conditional immunity will bar any civil claim, counter-claim, or cross-claim directed at the protected activities unless the petition or speech constitutes a sham:

"**Conditional Immunity.**—(a) A party's exercise of his or her right of petition or of free speech under the United States or Rhode Island constitutions in connection with a matter of public concern shall be conditionally immune from civil claims, counter-claims, or cross-claims. Such immunity will apply as a bar to any civil claim, counterclaim, or cross-claim directed at petition or free speech as defined in subsection (e) of this section, except if the petition or free speech constitutes a sham. The petition or free speech constitutes a sham only if it is not genuinely aimed at procuring favorable government action, result, or outcome, regardless of ultimate motive or purpose."

■ When an exercise of free speech or right of petition in connection with a matter of public concern is implicated, a plaintiff must prove that such conduct is a sham to defeat an anti-SLAPP defense. Section 9–33–2(a) continues:

"The petition or free speech will be deemed to constitute a sham * * * only if it is both:

(1) Objectively baseless in the sense that no reasonable person exercising the right of speech or petition could realistically expect success in procuring the government action, result, or outcome, and

(2) Subjectively baseless in the sense that it is actually an attempt to use the governmental process itself for its own direct effects. Use of outcome or result of the governmental process shall not constitute use of the governmental process itself for its own direct effects."

Section 9–33–2(e) defines the kinds of free speech and petitioning activity that will receive conditional immunity. The definition is as follows:

"As used in this section, 'a party's exercise of its right of petition or of free speech' shall mean any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; or any written or oral statement made in connection with an issue of public concern." *Id.*

The motion justice produced an extensive written analysis of Alves's complaint for libel and false light as those allegations pertained to Palazzo's affirmative defense under the anti-SLAPP statute. She found that "[w]ith respect to A. Palazzo's letters to the editor of the Daily Times, it is clear that the activity was of a type envisioned by the Legislature in enacting [the anti-SLAPP statute]." Citing our decision in *Global Waste Recycling, Inc. v. Mallette*, 762 A.2d 1208, 1211–12 (R.I.2000) (hereafter *Global Waste Recycling*), she noted that "speaking to a newspaper reporter is a frequently used method for members of the general public to communicate concerns to governmental authorities who are considering or reviewing a matter of public concern." She further cited the California case of *Damon v. Ocean Hills Journalism Club*, 85 Cal.App.4th 468, 102 Cal.Rptr.2d 205 (2000), for the proposition that writing a letter to the editor provides "a vehicle for communicating a message about public matters to a large and interested community." In *Damon*, 102 Cal.Rptr.2d at 207, 210, the subject letters were published in a homeowners' newsletter, the circulation of which was to approximately 3,000 area residents and local businesses.

■ We previously have upheld the constitutionality of the anti-SLAPP statute. *Hometown Properties, Inc.*, 680 A.2d at 60. We also have adopted the *Noerr–Pennington* test, and applied its protection to common-law tort claims. *Cove Road Development v. Western Cranston Industrial Park Associates*, 674 A.2d 1234, 1237 (R.I.1996) (reiterating *Noerr–Pennington* test for anti-SLAPP analysis). The *Noerr–Pennington* test is a creation of antitrust law designed to protect the legitimate exercise of the First Amendment right to petition the government without the petitioner's being vulnerable to retributive civil claims by the targets of the petitioning activity. *Hometown Properties, Inc.*, 680 A.2d at 60 (citing *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 56, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993)). Moreover, we have held that making public complaints to newspapers on matters of

public concern is protected activity within the meaning of the anti-SLAPP statute. *See Global Waste Recycling*, 762 A.2d at 1213.

■ In *Global Waste Recycling*, 762 A.2d at 1209–10, a construction and demolition debris recycling facility brought a defamation action against neighboring residents after the residents made comments to a local newspaper when a fire broke out on the recycling facility's grounds. We affirmed a Superior Court grant of summary judgment in favor of the local residents under the anti-SLAPP statute. *Id.* at 1213–14. We also therein adopted the analysis of the motion justice, who reasoned that the allegedly defamatory remarks were protected speech under the anti-SLAPP statute:

" 'The [defendants'] remarks were typical of those frequently made by citizens, taxpayers, neighbors or other residents of the community who wish to spark or spur governmental action or to otherwise obtain a satisfactory resolution of their concerns. Making loud and public complaints to newspaper reporters is a frequently used method for members of a community to affect local matters of interest or concern.' " *Id.* at 1211.

We specifically rejected the recycling facility's argument that the "statements for which immunity is claimed 'must be made *before* some type of legislative, judicial or administrative body' and 'not to the public via the print media.' " *Id.* at 1213. As in *Global Waste Recycling*, 762 A.2d at 1213, Palazzo's letters to the editor of a newspaper voicing his opinion on a public school construction project are prototypical examples of a protected exercise of free speech in a public forum on an issue of public concern.

The motion justice based her ruling on plaintiff's failure to satisfy the first part of the test to prove that Palazzo had engaged in sham petitioning. She explained her decision as follows:

"In his letters, A. Palazzo addressed a matter that was under review and consideration by a local governmental body. The statements addressed an issue of public concern in his community. He sent letters to the editor of a local newspaper. A. Palazzo expressed concern over the potential increased cost of the Natick school project. His statements concerning Plaintiff related to his position as a School Building Committee member and his alleged role with respect to the project. The Plaintiff has failed to demonstrate that the letters were objectively baseless in the sense that no reasonable person making those statements could have realistically expected success in procuring the government action, result or outcome."

Having found that Palazzo's statements in the letters to the editor were not objectively baseless, the motion justice did not address the subjective part of the test, and granted summary judgment on the libel and false-light counts.

In the course of our *de novo* review, we have reviewed the pleadings, memoranda, exhibits, and affidavits that the parties submitted in the light most favorable to plaintiff. *See, e.g., Global Waste Recycling*, 762 A.2d at 1212. After that review, we conclude that the hearing justice did not err and that summary judgment in favor of Palazzo was appropriate.

■ Alves contends that Palazzo's two letters, when read together, constitute actionable defamation. Specifically, he contends that Palazzo's statement, "I've noticed what I'd call a 'close' relationship between Sen. Alves and Mr. Eric Ahlborg," insinuates that the close relationship is the reason why Ahlborg's company was awarded the contract to build the

Natick School. There is no doubt that one may infer an allegation of *quid pro quo* between Alves and Ahlborg based on that comment. However, considering this comment in the larger context of the letter, it is clear that Palazzo made it for the larger purpose of calling the taxpayers' attention to the costs of the building project. Other inflammatory comments in the letter reveal this overall purpose. For instance, further in that same letter, Palazzo says "Mr. Rousselle and Sen. Alves believe that you really don't care how your money is spent." These comments clearly constitute a general, albeit hyperbolic, appeal to the affected taxpayers to examine the expense of the project.

Furthermore, the statement serves as a challenge to the members of the school committee to examine and justify the expenditures the project entailed, especially with regard to potentially changing sites for the school. In the same letter, Palazzo issued the following challenge:

> "I challenge anyone involved with this project to date, especially Mr. Rousselle, Sen. Alves and Ms. DiMasi, to deny the facts as I have presented them. Hopefully, you have noticed that they have not responded to the specific issues I have raised.
>
> "Why not? Because all the information relative to this Council, the SBC and the warnings about the school site, are a matter of public record."

All of the characterizations that Palazzo drew in the letter of October 9, 2001, were based on known or disclosed facts, and are clearly his interpretation of such facts. Saying that two people involved in a public project appear to have a "close" relationship only hints that there is an improper relationship; it does not elucidate the nature of the relationship.

Palazzo invited everyone who was present at the school committee meetings to observe what he had observed and inquire whether there was something improper going on between Alves and Mr. Ahlborg. Palazzo drew his opinion from their appearances at public meetings. Anyone present at those meetings could have drawn the same or a different conclusion about their relationship. Furthermore, Palazzo enclosed his description of what he called a "close" relationship between Alves and Ahlborg in quotes, signaling that he was merely characterizing their relationship and not stating it as fact. Palazzo's opinion was just that—an opinion, and it does not rise to the level necessary to constitute actionable defamation. *See Cullen,* 809 A.2d at 1111 ("The defendant's alleged defamatory statements were his opinion, and therefore, need not be adjudged true or false.").

◼ In addition, characterizing a relationship as "close," for the purposes of implying to the public that the "close" relationship is improper, does not rise to the level necessary to support a false-light claim when the characterization is mere opinion. *See Cullen,* 809 A.2d at 1112 ("When the statement giving rise to a false-light claim is one of opinion, this Court * * * holds that the same protections afforded opinions in a defamation claim also apply in the context of a false-light claim.").

◼ Alves also alleges that Palazzo's suggestion that "the taxpayers of this town are being used to bankroll and advance the personal and financial agendas of a 'chosen few'" supports his libel claim because it suggests that Alves rigged the bidding for the school project. The allegation falls apart when the above quote is read in context. The offending remark was introduced by the following opinion:

> "What I cannot support nor condone is what appears to be the Council's inten-

tion to go ahead with the current plan based upon phone calls and pressure exerted by political allies to the detriment of all other West Warwick taxpayers. Think about it—could it be possible that the taxpayers of this town are being used to bankroll * * *."

Examining the greater context of Palazzo's statement reveals that his *suggestion* that the taxpayers are being used to bankroll personal and financial agendas was leveled at the town council, and not at Alves. By implication, Alves may be a beneficiary of this cabal, one of the "chosen few," but the charge is clearly leveled against the town council. Moreover, all of Palazzo's cautionary language of "what appears to be the Council's intention * * *" and "could it be possible that the taxpayers * * *" makes clear that these are impressions of events concerning the funding of the project, as *he* saw them. They are his mere opinions, and not the stuff of which defamation and false light are made.

We also conclude that plaintiff's allegations based on Palazzo's statement that Alves was "exerting a lot of pressure to keep this project moving along * * *," must fail because the statement was mere hyperbole. Public officials are accused of and, often, do exert pressure to keep projects that they support "moving along." Such action would be commendable if the project is in the public interest. With respect to this particular project, Palazzo obviously believed it to be contrary to the public interest. The statement, however, is hardly defamatory.

■ The plaintiff further argues that because the trial justice failed to address whether Palazzo's statements were made with actual malice, he should be given an opportunity to prove whether Palazzo's statements were made with the requisite malice or recklessness to support his defamation claim. The plaintiff's argument

misstates the order of proof under the anti-SLAPP statute. The motion justice was correct when she wrote: "Having failed to prove that the published statements were objectively baseless, plaintiff cannot pursue a defamation action or an action based on false light against A. Palazzo based upon his letters to the editor." Because Palazzo's statements were not objectively baseless, they were entitled to immunity under the anti-SLAPP statute, precluding any finding of malice to support plaintiff's defamation claim. Once the motion justice determined that the statements were protected, Alves's defamation claim could not proceed.

■ Furthermore, Alves had an opportunity to demonstrate whether Palazzo's statements were made with malice in Superior Court. Section 9–33–2(b) provides as follows:

"The court shall stay all discovery proceedings in the action upon the filing of a motion asserting the immunity established by this section; provided, however, that the court, on motion and after a hearing and for good cause shown, may order that specified discovery be conducted."

Alves never filed a motion seeking permission to conduct special discovery on the issue of Palazzo's alleged malice. The statute provides that the court shall stay all discovery proceedings when a motion asserting immunity under the anti-SLAPP statute is asserted; however, that stay can be lifted on motion and after a hearing for good cause shown. Alves did not even attempt to show that he had good cause to pursue an inquiry into Palazzo's alleged malice.

We do not intend any of the foregoing analysis to dismiss defamation and false-light claims out of hand when a defendant claims conditional immunity under the

anti-SLAPP statute. We merely wish to highlight the deliberately high hurdle that a public official must clear to proceed under these common-law claims when citizens criticize public officials on issues of public concern.

In addition, plaintiff argues that the award of costs and attorneys' fees was improper. Although he did not address this issue in his written submissions, plaintiff's counsel attacked the award at oral argument as too great because he thought that many of the hours billed represented duplicate time in preparing defenses on behalf of Alan and William Palazzo. We also infer that plaintiff challenges any award for costs and attorneys' fees as error because he contends that his defamation claim should proceed. Both arguments fail.

Section 9–33–2(d) explicitly provides in part that "the court *shall* award the prevailing party costs and reasonable attorney's fees, including those incurred for the motion and any related discovery matters." (Emphasis added.) The motion justice wrote an erudite decision supporting her judgment that Palazzo prevailed under the anti-SLAPP statute. Having done so, an award of costs and reasonable attorneys' fees was mandatory.

Next, the plaintiff's challenge to the amount of the award fails for two reasons. First, the plaintiff has waived this argument by failing to include it in his brief as required by Article I, Rule 16(a) of the Supreme Court Rules of Appellate Procedure. *See Superior Group Ventures, Inc.*, 712 A.2d at 360. Second, even if the plaintiff had properly briefed this issue on appeal, the defendant's attorneys submitted affidavits and exhibits chronicling the hours they spent to prepare Palazzo's defense. The motion justice examined these affidavits and exhibits and made adjustments for a total award that she found reasonable. Palazzo received all the fees he requested for defending the slander count and half for defending the other counts he shared with William Palazzo. We will not disturb the award on appeal.

## Conclusion

For the foregoing reasons, we affirm the Superior Court judgment and remand the record in this case thereto.

Justice FLAHERTY did not participate.