### Kent TRAINOR

v.

### THE STANDARD TIMES et al.

#### No. 2006–97–Appeal.

Supreme Court of Rhode Island.

June 20, 2007.

Arthur E. Chatfield, Esq., Providence, for Plaintiff.

Michael F. Horan, Esq., Pawtucket, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

The plaintiff, Kent Trainor, appeals from a Superior Court judgment in favor of the defendant, The Standard Times, in a defamation action. The dispute arose as a result of a newspaper article published by the defendant on March 15, 2001. On appeal, the plaintiff's sole contention is that the trial justice erred in dismissing, pursuant to Rule 50 of the Superior Court Rules of Civil Procedure, the plaintiff's defamation claim on the basis of privilege.

This case came before this Court on December 13, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. Having considered the record, the briefs filed by the parties, and the oral arguments, we are of the opinion that cause has not been shown and that this case should be decided without further briefing or argument. For the reasons set forth herein, we affirm the judgment of the Superior Court.

### Facts and Travel

On May 19, 2000, plaintiff was charged with leaving the scene of an accident, personal injury resulting. Subsequently, on March 7, 2001, plaintiff was detained by the North Kingstown police when he was alleged to be driving with a suspended license, and he was arrested for failing to appear for a payment-schedule hearing stemming from the May 19, 2000 incident. The police report relating to the events of March 7, 2001, which was prepared by the North Kingstown Police Department, stated that the payment-schedule hearing for which plaintiff had failed to appear related to a charge of "leaving the scene of an accident, death resulting." A subsequent page of that same police report described the underlying charge as: "Leaving scene accident injury/death." A "Supplement Narrative," which was also part of the police report, specified that the warrant for plaintiff's arrest for failure to appear related to a charge of "leaving the scene of an accident, death resulting."

Shortly thereafter, on March 15, 2001, The Standard Times published a news item indicating that plaintiff had been arrested on a warrant "for failing to appear for a payment schedule, stemming from a leaving the scene of an accident, death resulting charge."

On May 19, 2003, plaintiff filed suit against the State of Rhode Island, the Rhode Island State Police and John Does 1–10, and The Standard Times. Summary judgment was entered in favor of the State of Rhode Island and the Rhode Island State Police and John Does 1–10 on April 20, 2005, but the motion for summary judgment of The Standard Times was denied. The plaintiff subsequently filed an amended complaint against The Standard Times containing two counts, one alleging defamation and one alleging the negligent infliction of emotional distress.

A jury trial commenced on February 8, 2006. On February 13, 2006, at the close of plaintiff's case, defendant moved for judgment as a matter of law pursuant to Rule 50; the trial justice granted the motion, and a judgment to that effect was entered. The plaintiff filed a timely notice

of appeal on February 28, 2006.[1]

## Standard of Review

■ When this Court reviews the entry of judgment as a matter of law pursuant to Rule 50(a)(1),[2] it applies the same standard as did the trial justice. *Mills v. State Sales, Inc.*, 824 A.2d 461, 472 (R.I. 2003); *see also Tedesco v. Connors*, 871 A.2d 920, 927 (R.I.2005). The trial justice, and consequently this Court, "considers the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draws from the record all reasonable inferences that support the position of the nonmoving party." *DeChristofaro v. Machala*, 685 A.2d 258, 262 (R.I. 1996); *see also Tedesco*, 871 A.2d at 927; *State Sales, Inc.*, 824 A.2d at 472. The trial justice may grant a Rule 50(a)(1) motion if "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Super. R. Civ. P. 50(a)(1); *see also Hanson v. Singsen*, 898 A.2d 1244, 1248 (R.I.2006); *State Sales, Inc.*, 824 A.2d at 472. However, the trial justice must deny the motion if there are factual issues concerning which reasonable persons may draw different conclusions. *Tedesco*, 871 A.2d at 927; *State Sales, Inc.*, 824 A.2d at 472; *Mellor v. O'Connor*, 712 A.2d 375, 377 (R.I.1998).

## Analysis

The plaintiff contends that the trial justice erred in dismissing, pursuant to Rule 50, plaintiff's defamation claim on the basis of privilege. We disagree with plaintiff's contention.

■ Under Rhode Island law, for a defamation plaintiff to prevail, he or she must prove the following elements: "(1) * * * a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence; and (4) damages." *Mills v. C.H.I.L.D., Inc.*, 837 A.2d 714, 720 (R.I.2003); *see also Kevorkian v. Glass*, 913 A.2d 1043, 1047 (R.I.2007); *Alves v. Hometown Newspapers, Inc.*, 857 A.2d 743, 751 (R.I.2004); *Healey v. New England Newspapers, Inc.*, 555 A.2d 321,

---

1. We need not formally rule upon the issue of whether the trial justice appropriately dismissed plaintiff's negligent infliction of emotional distress count because plaintiff concedes that the trial justice was correct in dismissing that count in view of the fact that he had dismissed the defamation count. It is nonetheless noteworthy that many cases from other jurisdictions have held that one may not breathe life into an otherwise doomed defamation claim by re-baptizing it as a different cause of action. *See, e.g., Yohe v. Nugent*, 321 F.3d 35, 44 (1st Cir.2003) (dismissing the plaintiff's emotional distress claim because it was "premised on precisely the same facts as his defamation claim" and then ruling that "a plaintiff cannot evade the protections of the fair report privilege merely by re-labeling his claim"); *Leidholdt v. L.F.P. Inc.*, 860 F.2d 890, 893 n. 4 (9th Cir.1988) ("An emotional distress claim based on the same facts as an unsuccessful libel claim cannot survive as an independent cause of action."); *see also Cor-*

*rellas v. Viveiros*, 410 Mass. 314, 572 N.E.2d 7, 13 (1991) ("A privilege which protected an individual from liability for defamation would be of little value if the individual were subject to liability under a different theory of tort."); *see generally Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988).

2. Rule 50(a)(1) of the Superior Court Rules of Civil Procedure reads as follows:

"If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue."

324 (R.I.1989). Additionally, it is well settled that "one who republishes libelous or slanderous material is subject to liability just as if he had published it originally." *Martin v. Wilson Publishing Co.*, 497 A.2d 322, 327 (R.I.1985); *Metcalf v. Times Publishing Co.*, 20 R.I. 674, 678, 40 A. 864, 865 (1898).

■ However, even if a plaintiff is able to prove all four of the above-mentioned elements of the tort of defamation, the publisher (or republisher) of a false and defamatory statement may be immunized from liability if he or she was privileged to make the statement at issue. *See C.H.I.L.D., Inc.*, 837 A.2d at 720; *see also Kevorkian*, 913 A.2d at 1048; *Swanson v. Speidel Corp.*, 110 R.I. 335, 339–40, 293 A.2d 307, 310 (1972). Whether or not a particular allegedly defamatory statement falls within a recognized privilege is a question of law. *E.g., C.H.I.L.D., Inc.*, 837 A.2d at 720 ("The determination of whether the privilege exists on the facts of a particular case is a question of law for the court to decide."); *Swanson*, 110 R.I. at 338–39, 293 A.2d at 309 ("[T]he determination of whether on the particular facts of a given case the privilege exists is exclusively legal and is for the court, and not for the jury."); *Ponticelli v. Mine Safety Appliance Co.*, 104 R.I. 549, 555, 247 A.2d 303, 307 (1968).

One of the several privileges that may be invoked in the proper circumstances is the fair report privilege.[3] Long recognized at common law, this privilege immunizes the publisher from liability for defamation if what is published is a "fair report" of (*inter alia*) an official action or proceeding. Restatement (Second) *Torts* § 611 at 297 (1977) ("The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported."); *see also Kenney v. Scripps Howard Broadcasting Co.*, 259 F.3d 922, 923–24 (8th Cir.2001); *Martin*, 497 A.2d at 328. The fair report privilege is often viewed as an exception to the common law republication rule. *See, e.g., Medico v. Time, Inc.*, 643 F.2d 134, 137 (3d Cir.1981); *Costello v. Ocean County Observer*, 136 N.J. 594, 643 A.2d 1012, 1018 (1994) ("The fair-report privilege is an exception to the general rule that imposes liability for republication of a defamatory statement."); *see also Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1299 (D.C.Cir.1988) ("To ameliorate the chilling effect that the republication rule would have on the reporting of controversial matters of public interest, common law courts * * * recognize a privilege for fair and accurate accounts of governmental proceedings.").[4]

---

**3.** The fair report privilege is discussed at length in the recent opinion of the Supreme Court of Illinois in the case of *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill.2d 558, 304 Ill.Dec. 369, 852 N.E.2d 825 (2006).

**4.** Although we need not and do not pass upon the issue in this case, we note that recognition of the fair report privilege may quite possibly be constitutionally required in light of the courts' continually evolving understanding of the implications of the First Amendment. *See Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1299 (D.C.Cir.1988) ("Federal

constitutional concerns are implicated * * * when common law liability is asserted against a defendant for an accurate account of judicial proceedings."); *see also Medico v. Time, Inc.*, 643 F.2d 134, 143–46 (3d Cir.1981); Restatement (Second) *Torts* § 611, cmt. *b* at 298 (1977) ("If the report of a public official proceeding is accurate or a fair abridgment, an action cannot constitutionally be maintained, either for defamation or for invasion of the right of privacy."); Michele A. Harrington, Note, *KARK–TV v. Simon: The Current Status of the "Fair Report" Privilege in Arkan-*

This Court has previously expressed the policy considerations behind the fair report privilege:

> "The common-law privilege of fair report protects the publication of fair and accurate reports of public meetings and judicial proceedings, even when an individual is defamed during the proceeding or action. This privilege does not abrogate the policy of protecting one's reputation but rather subordinates this value to the countervailing public interest in the availability of information about official proceedings and public meetings." *Martin,* 497 A.2d at 328.

This Court further stated that:

> "It is important to observe that the fair-report privilege accommodates the important societal interest in facilitating dissemination of information about judicial and governmental proceedings at which identified and identifiable persons may participate in resolving disputes and advancing the progress of government." *Martin,* 497 A.2d at 328–29.

■ With respect to the real-world application of the fair report privilege, a certain amount of "breathing space" is accorded to the publisher: the operative criterion is *substantial accuracy,* not perfect accuracy. *See, e.g., Ricciardi v. Weber,* 350 N.J.Super. 453, 795 A.2d 914, 924 (App. Div.2002) ("Although the account need not be exact in every immaterial detail, and although it is sufficient if it conveys to the listener or reader a substantially correct account, the report must nevertheless be fair."); *Alpine Industries Computers, Inc. v. Cowles Publishing Co.,* 114 Wash.App. 371, 57 P.3d 1178, 1187 (2002) ("For a report to be a fair abridgment of an official proceeding, surgical precision is not required so long as the report is substantially accurate and fair."); *see also Yohe v. Nugent,* 321 F.3d 35, 44 (1st Cir.2003) ("To qualify as 'fair and accurate' for purposes of the fair report privilege, an article reporting an official statement need only give a 'rough-and-ready' summary of the official's report * * *."); Restatement (Second) *Torts* § 611, cmt. *f* at 300 (1977) ("It is not necessary that it be exact in every immaterial detail or that it conform to the precision demanded in technical or scientific reporting. It is enough that it conveys to the persons who read it a substantially correct account of the proceedings.").

■ In the instant case, plaintiff suggests that the news item does not fall within the purview of the fair report privilege because the reporter misread the virgule [5] which appeared in the police report.

---

sas, 38 Ark. L.Rev. 181, 188 (1984) ("[T]he 'fair report' privilege seems to possess constitutional overtones."); Alfred Hill, *Defamation and Privacy Under the First Amendment,* 76 Col. L.Rev. 1205, 1219–20 (1976); Kathryn Dix Sowle, *Defamation and the First Amendment: The Case for a Constitutional Privilege of Fair Report,* 54 N.Y.U. L.Rev. 469 (1979); *see generally Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975); *Furgason v. Clausen,* 109 N.M. 331, 785 P.2d 242 (Ct.App.1989).

**5.** "Virgule" is, admittedly, a rather esoteric word. Nevertheless, it was used by both parties at trial to refer to the slash in the expression "injury/death" in the North Kingstown police report.

The first definition of "virgule" in the Random House Dictionary of the English Language 2125 (2d ed.1987) reads as follows: "[A] short oblique stroke (/) between two words indicating that whichever is appropriate may be chosen to complete the sense of the text in which they occur * * *." The same dictionary provides the following sentence as illustrative: "The defendant and/or his/her attorney must appear in court." (Emphasis omitted.)

Similarly, the American Heritage Dictionary of the English Language 1922 (4th ed.2000) defines "virgule" as meaning "[a]

Therefore, he contends, the news item was not a fair and accurate summary of the police report. However, even viewing the evidence in the light most favorable to plaintiff (the nonmoving party), we conclude, as did the trial justice, that the news item published by The Standard Times fell within the fair report privilege.

It is undisputed that the news item at issue in this case was based upon the above-referenced police report prepared by the North Kingstown Police Department. Police reports have often been held to constitute the sort of official report to which the fair report privilege may attach. *See, e.g., Porter v. Guam Publications, Inc.,* 643 F.2d 615, 616, 617 (9th Cir.1981); *Gist v. Macon County Sheriff's Department,* 284 Ill.App.3d 367, 219 Ill.Dec. 701, 671 N.E.2d 1154, 1161–62 (1996); Restatement (Second) *Torts* § 611 at 299 (1977); *see also Piracci v. Hearst Corp.,* 263 F.Supp. 511, 515 (D.Md.1966), *aff'd,* 371 F.2d 1016 (4th Cir.1967).

It is our view that the published news item was a fair abridgement of the contents of the police report. *See Furgason v. Clausen,* 109 N.M. 331, 785 P.2d 242, 245 (Ct.App.1989) ("In order to qualify for the fair report privilege a newspaper is not required to reprint an official report verbatim; it may instead summarize or abridge its contents."); *see generally New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). It is uncontested that the police report unequivocally indicated, in two separate places, that Mr. Trainor had left "the scene of an accident death resulting," while a third portion of that same report indicated that plaintiff had been charged with "[l]eaving scene accident injury/death." It would have been quite reasonable for a newspaper reporter to conclude that the third mention of the charge in the police report

(the one containing the virgule) should be read in light of the other two. In other words, the reporter could reasonably have concluded upon reading the report in its entirety that, given the two other explicit and unequivocal references in the report to "death resulting," the reader should opt for the "death resulting" choice presented by the virgule. *See generally Time, Inc. v. Pape,* 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971). We conclude that the reporter's reading of the virgule item in a manner that was consistent with the two definitive statements in the report which bluntly stated "death resulting" was substantially accurate and fair. In our judgment, the item published by The Standard Times constituted at the very least "a rough-and-ready summary that was substantially correct." *See MiGi, Inc. v. Gannett Massachusetts Broadcasters, Inc.,* 25 Mass.App.Ct. 394, 519 N.E.2d 283, 285 (1988). As such, it fell under the protection of the fair report privilege.

▪ The plaintiff also argues that the reporter for The Standard Times did not attempt to "check the story" behind the police report before publishing the news item regarding plaintiff. However, pursuant to the fair report privilege, a reporter is not required to conduct an independent investigation or to verify what is contained in the official document about which he or she is reporting. *See, e.g., Ortega v. Post–Newsweek Stations, Florida, Inc.,* 510 So.2d 972, 976 (Fla.Dist.Ct. App.1987) ("The press has no duty to go behind statements made at official proceedings and determine their accuracy before releasing them."); *Lami v. Pulitzer Publishing Co.,* 723 S.W.2d 458, 460 (Mo. Ct.App.1986); *Stover v. Journal Publishing Co.,* 105 N.M. 291, 731 P.2d 1335, 1338–39 (Ct.App.1985) ("[T]o require a re-

---

diagonal mark (/) used especially to separate

alternatives, as in and/or * * *."

porter to ascertain the truth or falsity of every statement uttered or published in an official or public proceeding would impose an intolerable burden on the press."); *Clapp v. Olympic View Publishing Co.*, 137 Wash.App. 470, 154 P.3d 230, 235 (2007). The fair report privilege applies regardless of the actual truth or falsity of what is contained in the underlying official report. *See, e.g., Oparaugo v. Watts*, 884 A.2d 63, 82 n. 14 (D.C.2005) ("[F]or purposes of this privilege, accuracy is not determined by comparing the official record with the actual facts; it is judged by comparing the publisher's report with the official record."); *Myers v. The Telegraph*, 332 Ill.App.3d 917, 265 Ill.Dec. 830, 773 N.E.2d 192, 198 (2002). Accordingly, we reject plaintiff's argument in this respect.

Having carefully reviewed the record in light of the applicable principles of law, it is clear to us beyond peradventure that the publication at issue in this case was privileged pursuant to the common law fair report privilege and that, therefore, the trial justice properly granted the motion for judgment as a matter of law.

### Conclusion

For these reasons, we affirm the judgment of the Superior Court. The record may be remanded to the Superior Court.